Francisco Ballester Ripoll, peticionario, *v.* Tribunal de Apelación de Contribuciones, etc., demandados; Rafael Buscaglia, Tesorero de Puerto Rico, interventor.

Núm. 1300.—*Sometido:* Julio 2, 1942. *Resuelto:* Julio 23, 1942.

*J. J. Ortiz Alibrán,* abogado del peticionario; *Hon. Procurador General George A. Malcolm, M. Rodríguez Ramos, Procurador General Auxiliar* y *Eulogio Riera, Subprocurador Auxiliar,* abogados del interventor.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

El 15 de marzo de 1941 Francisco Ballester Ripoll y su esposa radicaron planillas separadas de contribuciones sobre ingreso por el año terminado en diciembre 31, 1940. Sus planillas reflejaban un ingreso neto de $39,058.90, y sobre éste pagaron contribuciones ascendentes a $908.78.

El 18 de agosto de 1941 el Tesorero dirigió al peticionario una comunicación titulada "Notificación y Requeri-

miento''. Este documento era una forma impresa que lee como sigue:

''Por la presente se le notifica que su declaración de ingresos, planilla número [347], rendida por el año contributivo terminado en [diciembre 31, 1940], ha sido reliquidada por este Departamento, de acuerdo con las disposiciones de la Ley Núm. 31, aprobada en abril 12, 1941, y la Ley Núm. 159, aprobada en mayo 13, 1941, enmendatorias con retroactividad al 1º de enero del 1940, de la Ley de Contribución sobre Ingresos Núm. 74, de agosto 6, 1925, según fué subsiguientemente enmendada, tomando como base el ingreso neto declarado originalmente en su citada planilla, en la forma que se detalla a continuación:

| | | |
|---|---|---|
| ''[Ingreso neto según su planilla | | $19,529.45 |
| Ingreso neto según planilla de su esposa | | 19,529.45 |
| | | $39,058.90 |
| Menos: Exención personal | $2,000.00 | |
| Crédito por dependientes | 1,200.00 | |
| | | 3,200.00 |
| Ingreso neto sujeto a contribución normal | | $35,858.90 |
| Contribución Normal: | | |
| 8 por ciento sobre $35,858.90 | $2,868.71 | |
| Contribución Adicional | 3,701.78 | |
| Total Contribución | | $6,570.49 |
| Menos: | | |
| Contribución impuesta por Rec. No. 770–771 | | 908.78 |
| Balance a pagar | | $5,661.71] |

''Si dentro del término de DIEZ (10) DÍAS, a partir de esta fecha no fuere satisfecha la cantidad de [$2,830.86], importe del primer plazo de la nueva contribución adeudada de acuerdo con la anterior liquidación, se cobrarán recargos a razón del uno por ciento mensual, desde la fecha de este requerimiento.

''El segundo plazo deberá pagarse en o antes de [septiembre 15, 1941].''

Lo que está dentro de corchetes, que se aplica al caso específico del peticionario, fué insertado en maquinilla en la forma impresa.

El 21 de agosto de 1941 el abogado del peticionario escribió al Tesorero solicitando de éste que "anulara la contribución impuesta" en este caso. El Subtesorero Interino contestó por carta de septiembre 10, 1941, que lee en parte como sigue:

"En contestación se le informa que la Notificación y Requerimiento hecha a su representado en agosto 18 de 1941, no constituye una deficiencia estatutaria toda vez que la misma no es una tasación preventiva y sí la imposición de la contribución computada al tipo que dispone la ley en vigor.

"Tampoco dicha notificación y requerimiento de pago es una decisión administrativa del Tesorero, que dé jurisdicción al Tribunal de Apelación de Contribuciones de Puerto Puerto, pues ello tan sólo constituye un acto ministerial del Tesorero en cumplimiento de la ley."

El 1 de octubre de 1941 el peticionario radicó ante el Tribunal de Apelación de Contribuciones una querella contra el Tesorero. El Tesorero radicó una contestación el 24 de diciembre de 1941, el caso fué visto en sus méritos el 27 de enero de 1942, y quedó sometido para ser resuelto por el Tribunal de Apelación de Contribuciones. El 27 de mayo de 1942 el Tribunal de Apelación de Contribuciones decidió que no tenía jurisdicción para conocer del caso, y ordenó al Tesorero que cobrase la contribución en controversia de acuerdo con dicha decisión. Expedimos el auto preliminar de *certiorari*.

Aunque el Procurador General, que representaba al Tesorero, siguió la práctica corriente de radicar una alegación formal y de rutina impugnando la jurisdicción del tribunal, ninguna de las partes argumentó este asunto en el Tribunal de Apelación de Contribuciones y el caso fué visto en sus méritos por el tribunal y quedó sometido para decisión. El tribunal *motu proprio* resolvió que no tenía jurisdicción por el fundamento de que el caso envolvía una deficiencia, y que el contribuyente había omitido prestar la fianza que es un requisito jurisdiccional en tales casos.

■ Bajo la Ley de Contribuciones sobre Ingresos de 1924, según ha sido enmendada, el contribuyente normalmente prepara su propia planilla, computa su propia contribución y la paga dentro del período estatutario (sección 53). "Tan pronto como sea factible después de haberse radicado una declaración, el Tesorero de Puerto Rico . . . la examina(rá), y determina(rá) el importe exacto de la contribución" (sección 54). Si el Tesorero no está de acuerdo con el contribuyente en cuanto a la cantidad, notifica al contribuyente por correo certificado de una deficiencia, pero en realidad no tasa la deficiencia hasta que no se le haya dado al contribuyente la oportunidad de tomar ciertos pasos para atacarla (sección 57(a)). Sin embargo, si el Tesorero creyere que la tasación o cobro de una deficiencia ha de ser comprometida por la demora, dicha deficiencia será tasada inmediatamente y la notificación y requerimiento para el pago de la misma hechos por el Tesorero. (Sección 57(d); ahora 57(c), a virtud de la enmienda a la sección 57 contenida en la sección 6 de la Ley Núm. 23, Leyes de Puerto Rico, 1941, Sesión Extraordinaria.)

Nos remitimos ahora a los hechos del presente caso. El Tesorero, como hemos visto, asumió la posición en su "Notificación y Requerimiento" de 18 de agosto de 1941 de que en este caso no estaba envuelta deficiencia alguna. En su consecuencia, no envió al contribuyente la notificación de deficiencia por correo certificado exigida por la sección 57(a) en tales casos. Parecería obvio por tanto, sin discusión ulterior, que no está envuelta aquí deficiencia alguna, y que el requisito jurisdiccional de la sección 57(a) (según quedó enmendada por la sección 7 de la Ley Núm. 102, Leyes de Puerto Rico, 1936; la sección 5 de la Ley Núm. 159, Leyes de Puerto Rico, 1941; y la sección 6 de la Ley Núm. 23, Leyes de Puerto Rico, 1941, Sesión Extraordinaria) de que debe prestarse una fianza por el 75 por ciento de la contribución para así poder el contribuyente tener derecho a la revisión

estatutaria de la determinación de una deficiencia hecha por el Tesorero, no podría en manera alguna aplicarse a este caso.

El Tribunal de Apelación de Contribuciones sin embargo resolvió que sí existía una deficiencia en este caso, y que en vista de que el contribuyente no prestó la referida fianza, no tenía jurisdicción para conocer del caso. Aún concediendo que el Tesorero no había notificado al contribuyente una deficiencia como lo exigía la sección 57(a), el tribunal concluye sin embargo que el Tesorero había hecho en este caso un *jeopardy assessment* bajo la entonces sección 57(d), que provee que cuando el Tesorero hace un jeopardy assessment, la notificación al contribuyente por correo certificado y otros requisitos de la sección 57(a) para deficiencias no tienen que ser cumplidos por el Tesorero.

El Tribunal de Apelación de Contribuciones, al llegar a esta conclusión, afirma que no tiene derecho a sustituir su criterio en cuanto a que debe hacerse un jeopardy assessment por el del Tesorero. El tribunal cita con aprobación, de Hamel, *Practice and Evidence Before the U. S. Board of Tax Appeals*, página 77, a ese efecto, como sigue:

"Jurisdicción para decidir cuestiones específicas. *a.* Regla general. Aunque en general la Junta tiene jurisdicción para considerar todas las cuestiones necesarias a la determinación de la debida deficiencia o pago en exceso, no pasará sobre cuestiones que están consideradas como cuestiones de administración de Negociado. Cuestiones de esta clase son la aceptación o rechazo de planillas enmendadas, el punto de si un pago en exceso debe acreditarse o reembolsarse, y de si existe '*jeopardy*' para justificar un *jeopardy assessment.*"

El tribunal está correcto en su afirmación de que no puede intervenir en la actuación del Tesorero al hacer un jeopardy assessment. Pero, por la misma razón, no hay autoridad o poder en el tribunal para resolver que el Tesorero ha hecho, o debió haber hecho un jeopardy assessment cuando no lo hizo. La disposición para jeopardy assessments contempla evidente-

mente que será utilizada por el Tesorero en aquellas situaciones de emergencia como la fuga inminente del contribuyente, la disposición por él de su propiedad, o el vencimiento del período de prescripción. Y aquí el Tesorero no llegó a tales conclusiones (*findings*). Como ya hemos visto, lejos de proceder por la vía del *jeopardy,* el Tesorero notificó al contribuyente que esto ni siquiera era una deficiencia, y que permitiría el pago a plazos. El Procurador General, ni en su alegato ni en el argumento oral, realizó esfuerzo alguno para sostener la posición del Tribunal de Apelación de Contribuciones de que el Tesorero hizo aquí un jeopardy assessment. La conclusión del Tribunal de Apelación de Contribuciones de que esto se había hecho no tenía base y debe descartarse.

■■ Por tanto tenemos que retrotraernos a la cuestión original en este caso—¿fué "la Notificación y Requerimiento" del Tesorero la determinación de una deficiencia de acuerdo con la sección 57(a)? Una deficiencia es la cantidad por la cual la contribución impuesta por la Ley de Contribuciones sobre Ingresos excede de la cantidad declarada por el contribuyente como importe de la contribución (sección 56(*l*)).

La situación aquí es única. No se ha llamado nuestra atención hacia caso alguno que pueda enteramente aplicarse a esta cuestión. La deficiencia tradicional surge, como ya se ha indicado, a virtud de un examen de la planilla del contribuyente y una determinación del Tesorero de que el contribuyente *en la fecha en que rindió la planilla* debía una contribución sobre ingresos mayor, *bajo la ley que entonces regía,* a la que él declaró y pagó. Véase *Veeder v. Commissioner of Internal Revenue,* 36 F. (2) 342, 343 (C.C.A. 7th Cir., 1929). Ciertamente no hubo aquí, por tanto, una deficiencia en el sentido usual. El Tesorero no ha puesto en tela de juicio la veracidad de las planillas del peticionario y su esposa en la fecha en que se radicaron. La contribu-

ción adicional que ahora se reclama se hizo exigible por primera vez *después* que estas planillas habían sido radicadas, a virtud de las Leyes Núms. 31 y 159, Leyes de Puerto Rico, 1941, que disponían que sus disposiciones tendrían efecto retroactivo desde el 1 de enero de 1940. El mismo Tesorero en la "Notificación y Requerimiento" la llama una contribución *nueva,* en vez de una contribución que el peticionario y su esposa debieron pagar y no pagaron a la época en que rindieron sus planillas el 15 de marzo de 1941.

El Procurador General, que representa al Tesorero, trata aquí en su alegato de que el peticionario se ajuste a la alegación de su querella ante el Tribunal de Apelación de Contribuciones de que la contribución en controversia envolvía una deficiencia, y argumenta que el Tribunal de Apelación de Contribuciones por tanto correctamente resolvió que no tenía jurisdicción para proceder, en vista de la falta de la fianza exigida por la sección 57(*a*) para casos de deficiencia. Pero alega el peticionario que toda vez que éste no es un jeopardy assessment, y toda vez que el Tesorero omitió cumplir con los requisitos estatutarios de notificación *et al.* provistos para una deficiencia, no puede considerársele como tal. Paul and Mertens, *Law of Federal Income Taxation,* vol. 5, sections 42.52, 42.53, 43.09; *Heinemann Chemical Co. v. Heiner,* 92 F. (2) 344 (C. C. A. 3rd Circ. 1937). Y es suficientemente claro que el Tesorero resistió todos los esfuerzos del contribuyente para que se resolviera la controversia de la manera provista por el estatuto para deficiencias. Seguir los argumentos del Tesorero y del contribuyente hasta la conclusión lógica de cada uno de ellos sólo serviría por tanto para producir un impase.

En su consecuencia entraremos a considerar la posible solución de que una "resolución administrativa" ha sido tomada por el Tesorero en este caso. El Tesorero en su carta del 10 de septiembre de 1941 afirmó que al enviar su "Notificación y Requerimiento" había efectuado solamente

un acto ministerial. Esta posición a primera vista parece razonable. Por ejemplo si el Tesorero hubiera omitido enviar notificación alguna a tales contribuyentes, no puede dudarse que la responsabilidad de éstos por las contribuciones en cuestión hubiera permanecido inalterada. Esto perece particularmente cierto en vista de la aparente falta de requisito, por ley o por reglamento, de que se rindiera una planilla nueva o suplementaria en conexión con la contribución adicional impuesta retroactivamente.

Sin embargo este resultado debe evitarse de ser posible, toda vez que si se sigue hasta su conclusión lógica, militaría directamente en contra de una vieja política establecida por la Legislatura. Esta política se expresa en la terminante inhibición estatutaria contra la expedición de autos de *injunction* para impedir el cobro de contribuciones, o que se pongan en vigor los estatutos contributivos. (Véanse *Fernández* v. *Tesorero,* ante, pág. 596, decidido en junio 18, 1942; *Smallwood* v. *Gallardo,* 275 U.S. 56.). Este estatuto se basa en la sana política pública de que el impedir el ingreso de la renta pública resulta en una paralización de las operaciones gubernamentales. Los contribuyentes deben, a menos que un estatuto disponga lo contrario, pagar primero y litigar después. Es solamente cuando el contribuyente carece de *remedio judicial alguno* para obtener la revisión de determinaciones ejecutivas en cuanto a su responsabilidad contributiva, que las cortes pueden impedir la acción ejecutiva con el fin de cobrar tales contribuciones (véase *Fernández* v. *Tesorero,* supra).

Resolver, como afirma el Tesorero, que las contribuciones aquí en controversia no se deben ni a virtud de una deficiencia ni a virtud de una resolución administrativa suya, y que el Tribunal de Apelación de Contribuciones carecía por tanto de jurisdicción, justificaría ampliamente al contribuyente en recurrir al injunction por el fundamento de que no existía otro remedio. Pero esta corte no desea trastornar la polí-

tica legislativa contra el remedio de injunction en casos de contribuciones, si puede evitarse tal resultado. Tenemos a la mano la conclusión obvia. Si la "Notificación y Requerimiento" del 18 de agosto de 1941, demandando del peticionario que pagase una *nueva* contribución de $5,661.71, es una "resolución administrativa" dentro del significado de la sección 4 de la Ley Núm. 172, Leyes de Puerto Rico, 1941, el Tribunal de Apelación de Contribuciones bajo dicha sección tiene jurisdicción en este caso, el contribuyente tiene un adecuado remedio estatutario, y el injunction, en el caso ordinario, por tanto, no procedería.

Ésta no es una deducción enteramente ilógica de los hechos tal como surgen del récord. El Tesorero intentó hacer algo. Puede argüirse que su acción equivalió meramente a un cálculo matemático. Pero el resultado neto fué que estaba advirtiendo al contribuyente de su conclusión de que las Leyes Núms. 31 y 159 le eran aplicables en diversos aspectos detallados, dando la cantidad exacta que se debía y resolviendo que las disposiciones retroactivas eran válidas y se aplicaban a él en cierto modo detallado.

Como ya se ha dicho, no se han traído a nuestra atención autoridades en las cuales esta situación única haya sido considerada. El caso que más se asemeja, según hemos podido encontrar, es el de *Zellerbach* v. *Helvering*, 293 U.S. 172, en el que la cuestión en controversia era si el período prescriptivo dentro del cual el Comisionado de Rentas Internas podía hacer una tasación de deficiencia era calculado desde la fecha en que se radicaba originalmente la planilla, a pesar del hecho de que el estatuto había sido enmendado, como ocurre aquí, retroactivamente aumentando las contribuciones en ciertos aspectos. En el caso de *Zellerbach* la situación era algo diferente ya que a los contribuyentes se les exigía "radicar una planilla nueva o suplementaria que cubriera tal contribución adicional" (página 174). Sin embargo, la teoría y el lenguaje del caso de *Zellerbach* destaca el hecho

de que una contribución retroactiva es una contribución adicional mediante operación de ley más una determinación por el Tesorero en cuanto a la aplicación exacta de sus numerosas disposiciones y la cantidad exacta que se adeuda por este contribuyente específico. Véase el comentario al caso de *Zellerbach* en 48 Harv. L. Rev. 858.

Resolver que la actuación del Tesorero al determinar la cantidad de la presente contribución constituye una "resolución administrativa" de su parte, no violenta en manera alguna la Ley Núm. 172. En verdad, cumple el propósito general del estatuto para canalizar todos los casos de contribuciones de ciertos tipos hacia el Tribunal de Apelación de Contribuciones. No crea injusticia alguna para cualquiera de las partes. Y más importante, llamar la actuación del Tesorero una resolución administrativa y proveer por tanto la revisión judicial, o cuasijudicial, por el Tribunal de Apelación de Contribuciones bajo la sección 4 de la Ley Núm. 172, nos permite poner en vigor la sabia política de la Legislatura establecida hace tiempo para evitar el remedio de injunction al cual tendría derecho el contribuyente bajo estas circunstancias, si no llegáramos a esta conclusión.

Además, este resultado parecería particularmente deseable en vista del hecho que del mismo, junto con nuestra opinión en *Mayagüez Sugar Company, Inc.* v. *Tribunal de Apelación de Contribuciones,* ante (pág. 753), surgiría (*a*) la inmunidad de que se obstaculice el ingreso de la renta pública mediante injunction y (*b*) la integración de todos los remedios de revisión por esta Corte de las decisiones del Tribunal de Apelación de Contribuciones bajo la sección 5 de la Ley Núm. 172, que dispone para tal revisión un certiorari de naturaleza especial.

Al resolver que la actuación del Tesorero al enviar al peticionario la "Notificación y Requerimiento" de agosto 18, 1941, equivalía a una resolución administrativa, quizás estemos permitiendo alguna elasticidad (*play at the joints*) en la

aplicación de la Ley Núm. 172. Pero las cortes no funcionan en un vacío. Los resultados prácticos de sus decisiones no pueden, y no deben, ser rechazados por ellas. "Reconozco, sin vacilación alguna, que los jueces legislan y deben legislar, pero pueden hacerlo así sólo en los intersticios (*interstitially*). Están limitados desde los movimientos molares hasta los moleculares." (El Juez Holmes disintiendo en el caso de *Southern Pacific Company* v. *Jensen,* 244 U.S. 205, 221.) Si se considerara que en nuestra decisión de este punto estamos siguiendo este comparativamente moderado mandato del Juez Holmes, creemos que la situación eminentemente justifica nuestra acción.

Nos sentimos constreñidos a añadir que tanto la decisión como el razonamiento de este caso sobre este punto específico están limitados a los hechos peculiares y cuestiones de derecho con que nos confrontamos aquí. No debe entenderse que resolvemos que *todas* las resoluciones del Tesorero están sujetas a revisión por el Tribunal de Apelación de Contribuciones. Hasta el punto que la Ley de Contribuciones sobre Ingresos y otros estatutos confieren discreción al Tesorero para tomar cierta acción, tal como imponer jeopardy assessments, como en el presente caso, cuándo debe hacer determinaciones definitivas (sección 73), cuándo remitir (sección 75), etc., no encontramos intención alguna expresada por la Legislatura en la Ley Núm. 172 que crea el Tribunal de Apelación de Contribuciones para sustituir la discreción de dicho tribunal por la del Tesorero.

■■ Restan tres cuestiones de procedimiento suscitadas por el Procurador General. Arguye primeramente que como este caso envuelve una deficiencia, el contribuyente debió haber recurrido ante esta corte mediante apelación en vez de certiorari. Hemos resuelto que aún en casos sobre deficiencia, el certiorari, de conformidad con la sección 5 de la Ley Núm. 172, Leyes de Puerto Rico, 1941, es el remedio adecuado para nosotros revisar las decisiones del Tribunal

de Apelación de Contribuciones (*Mayagüez Sugar Co., Inc. v. Tribunal de Apelación de Contribuciones, etc.* ante, pág. 753, resuelto en julio 23, 1942). En adición, como ya hemos resuelto que el asunto aquí en controversia envuelve una "resolución(es) del Tesorero de Puerto Rico que afecte(n) al . . . pago de contribución sobre . . . ingresos . . ." dentro del alcance de la sección 4 de la Ley Núm. 172, el certiorari de naturaleza especial provisto en la sección 5 para la revisión por esta corte de tales casos, era claramente el adecuado para elevar aquí este caso.

El Procurador General entonces alega que la decisión del Tribunal de Apelación de Contribuciones en este caso no era una decisión final, y que la apelación es por tanto prematura. Su contención es que el contribuyente pudo haber tratado de reabrir el caso con el fin de (a) prestar la fianza exigida y (b) radicar una querella enmendada alegando que así lo había hecho. Arguye que si el contribuyente no deseaba seguir este curso, debió en tal caso haber solicitado una "decisión" final y definitiva del Tribunal de Apelación de Contribuciones que le permitiera obtener una revisión de la misma en esta Corte. El Procurador General invoca la analogía de una resolución de una corte de distrito declarando con lugar una excepción previa que ordinariamente no es apelable. En tales circunstancias, la parte perjudicada debe pedir que se dicte una sentencia final de la cual pueda ella apelar.

Cierto es que el tribunal dijo en el párrafo final de su "decisión" que si el contribuyente prestaba la fianza exigida por la sección 62(a) de la Ley de Contribuciones sobre Ingresos, el tribunal reabriría el caso con el fin de considerarlo en sus méritos. Pero eso está muy lejos de resolver que la decisión del tribunal no fuese final. Al contrario, el tribunal procedió en la misma fecha a expedir una "orden" al Tesorero que dice como sigue:

"Se acompaña con la presente copia certificada de la decisión en el caso de epígrafe, mediante la cual no se varía en modo alguno la imposición de la contribución hecha por el Tesorero de Puerto Rico. Se le ordena, por lo tanto, que proceda al cobro de la misma de conformidad con los términos de la mencionada decisión."

Es difícil comprender cómo el Tribunal de Apelación de Contribuciones pudo haber rendido una resolución más definitiva y concluyente. Su decisión, de no modificarse o revocarse, resultaría ciertamente en el cobro de la contribución. Aún asumiendo que el contribuyente hubiera solicitado la reapertura del caso para obtener la modificación de la decisión, no estaba obligado a hacerlo así. Y la analogía que establece el Procurador General con pleitos ordinarios, que exigen se dicte sentencia después que una corte de distrito rinde una resolución declarando con lugar una excepción previa para así poder apelar de ella, no es aplicable, toda vez que la Ley creando el Tribunal de Apelación de Contribuciones no hace tal distinción. Su sección 5 dispone la revisión por esta corte de sus "decisiones". Exigir al contribuyente que solicite del tribunal que dicte otra "decisión" final basada en una decisión que ya había sido dictada, sería enfrascarnos en formalidades que no tienen ningún fin práctico. Ciertamente no estamos preparados para decir que bajo las circunstancias de este caso y como consecuencia del mismo, se privó completamente al contribuyente de su derecho a revisión por esta corte.

El Procurador General arguye finalmente que la apelación debe desestimarse ya que el contribuyente voluntariamente pagó las contribuciones en cuestión. Para sostener su contención el Procurador General cita los casos de *Agudo* v. *Sancho*, 89 F. (2) 481, 484; *Jiménez* v. *Domenech*, 80 F. (2) 767, 778; *Bonet* v. *Yabucoa Sugar Co.*, 306 U. S. 505, 508; y *Oliver* v. *Domenech*, 58 D.P.R. 64, 69. En verdad, el Procurador General sostiene que aun el Tribunal de Apelación de Contribuciones no tiene ya jurisdicción en este

caso por virtud del alegado pago voluntario, citando el caso de *Yabucoa*. El razonamiento del Procurador General es que los estatutos disponen que después de una decisión final del Tribunal de Apelación de Contribuciones, el contribuyente, para poder obtener una revisión de tal decisión por esta Corte, debe pagar su contribución bajo protesta. El Procurador General no discute que el contribuyente en este caso, con posterioridad a la decisión rendida por el Tribunal de Apelación de Contribuciones, pagó las contribuciones en cuestión bajo protesta. Sin embargo, el Procurador General afirma que toda vez que la decisión en cuestión no era una final, el contribuyente por tanto pagó la contribución con anterioridad a la decisión contemplada por la sección 5 de la Ley Núm. 172. El Procurador General concluye, por tanto, que el pago debe tratarse como voluntario, con todas las consecuencias provenientes de tal acción. Este argumento, desde luego, está basado en la premisa de que la decisión del Tribunal de Apelación de Contribuciones en este caso no era final. Como ya hemos rechazado esa premisa, resolvemos que el pago fué adecuadamente hecho bajo protesta después de la decisión del Tribunal de Apelación de Contribuciones, y que por tanto tenemos jurisdicción para considerar este caso.

El peticionario nos pide que dispongamos del caso en sus méritos, incluyendo la alegada nulidad de varias disposiciones de las Leyes Núms. 31 y 159, Leyes de Puerto Rico, 1941. El récord demuestra que no hubo discusión seria entre las partes acerca de los hechos, y por tanto quizá sería posible tomar tal acción. Sin embargo, en vista del hecho de que el Tribunal de Apelación de Contribuciones habiéndose negado a adquirir jurisdicción, nunca pasó sobre las cuestiones de hecho y de derecho, creemos que, bajo las circunstancias de este caso específico, sería conveniente para nosotros tener el beneficio de sus puntos de vista antes de

resolver las numerosas cuestiones suscitadas en relación con los méritos en este caso.

*La decisión del Tribunal de Apelación de Contribuciones será revocada y devuelto el caso a dicho tribunal para ulteriores procedimientos no inconsistentes con esta opinión.*

El Juez Asociado Sr. Travieso no intervino.