JULIA BLANCO GÉIGEL, peticionaria, *v.* TRIBUNAL DE APELACIÓN DE CONTRIBUCIONES, ETC., demandado.

Núm. 1307. *Sometido:* Julio 15, 1942. *Resuelto:* Noviembre 9, 1942.

*J. J. Ortiz Alibrán,* abogado de la recurrente; *Hon. Procurador General George A. Malcolm, M. Rodríguez Ramos, Procurador General Auxiliar* y *Eulogio Riera, Subprocurador Auxiliar,* abogados del Tesorero Insular, opositor.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Este es un' procedimiento de *certiorari* establecido de acuerdo con la Ley número 172 de 1941 ((1) pág. 1039).

El 6 de julio de 1942 Julia Blanco Géigel archivó el escrito inicial titulado "Apelación," con súplica de que se expidiera un auto de certiorari dirigido al Tribunal de Apelación de Contribuciones, reclamando los autos originales del caso I–375 a fin de revisarlos, anulando la resolución apelada y dictando otra ordenando el reintegro de la contribución pagada bajo protesta. Se acompañaron los comprobantes del pago hecho el 9 de enero de 1942.

El auto fué expedido. Cumpliéndolo, el Tribunal de Apelación de Contribuciones remitió el expediente número I–375. La vista se celebró el 15 de julio de 1942, compareciendo el Tesorero de Puerto Rico oponiéndose a las pretensiones de la recurrente.

Alega ésta que notificada de una reliquidación de su con-
tribución sobre ingresos correspondiente al año 1940, hecha
por el Tesorero a virtud de una ley posterior a la que dió
efecto retroactivo, solicitó del mismo el 10 de septiembre de
1941 que anulara la contribución, a lo que se negó el 26 de
noviembre de 1941; que el 11 de diciembre de 1941 recurrió
de la resolución del Tesorero para ante el Tribunal de Ape-
lación de Contribuciones; que el 4 de junio de 1942 el recurso
fué señalado para vista junto con otros diecinueve más y la
peticionaria solicitó la suspensión, discutiéndose su moción el
1 de junio de 1942; que el tribunal se reservó su resolución,
pero de hecho suspendió la vista y, eso no obstante, el 5 de
junio de 1942, basándose en la evidencia del caso de *Ballester,*
dictó resolución final como si el recurso le hubiera sido some-
tido en su fondo, resolviendo cuestiones en *issue,* declarándose
sin jurisdicción, y dictando una providencia sosteniendo la
contribución y ordenando su cobro.

Alega además la peticionaria que solicitó reconsideración
y el tribunal la negó, enumerando seguidamente los errores
que le imputa, a saber: haber resuelto el recurso sin haberle
sido sometido; haberse declarado sin jurisdicción y dictado
orden confirmando la contribución; haberse declarado sin
jurisdicción por no haberse prestado fianza; no haber re-
suelto que la contribución era nula por los motivos que se
especifican; no haber resuelto que las leyes números 31 y
159 de 1941 ((1) págs. 479 y 973) no tienen efecto retroactivo,
y, de entenderse lo contrario, que tal retroactividad fué dero-
gada por la Ley número 23 de 1941 ((2) pág. 73), y, en todo
caso, que la retroactividad es nula, y, por último, que si tomó
como base para su decisión la evidencia del caso de *Ballester,*
incurrió en manifiesto error al apreciarla.

Cuatro son los fundamentos de oposición del Tesorero, a
saber: 1, que el certiorari establecido por la contribuyente
no está autorizado por la Ley número 172 de 1941; 2, que
no se prestó fianza para recurrir ante el Tribunal de Apela-

ción de Contribuciones; 3, que no se pagó bajo protesta al recurrir para ante esta Corte Suprema; y 4, que el pago hecho, no obstante haberse consignado que se hacía bajo protesta, debe reputarse voluntario con todas las consecuencias que se derivan de esa consideración.

Comenzaremos nuestro estudio por el de las cuestiones levantadas por el Tesorero.

▉ ·La primera no está bien fundada. Quedó resuelta de modo terminante en contra de la contención del Tesorero en el caso de *Ballester* v. *Tribl. de Apelación,* 60 D.P.R. 768, en los siguientes términos:

"El certiorari de naturaleza especial según se dispone en la sección 5 de la Ley Núm. 172 de 1941 ((1) pág. 1039), es el apropiado para elevar a esta Corte Suprema casos en los cuales el asunto en controversia envuelva una resolución del Tesorero dentro del alcance de la sección 4 de esa ley, que afecte al pago de una contribución sobre ingresos."

▉ Tampoco está bien fundada la segunda, porque aquí no se trata de una "deficiencia" y sólo en el caso de "deficiencias" es que la ley requiere que se preste una fianza para recurrir de la resolución del Tesorero para ante el Tribunal de Apelación de Contribuciones.

Como la situación jurídica que presentan los hechos de este caso es en este extremo enteramente igual a la que surgió en el caso de *Ballester,* supra, parece conveniente transcribir por lo menos una parte del razonamiento en el dicho caso de *Ballester.*

Hablando por la corte, el Juez Asociado Sr. Snyder se expresó así:

"La situación aquí es única. No se ha llamado nuestra atención hacia caso alguno que pueda enteramente aplicarse a esta cuestión. La deficiencia tradicional surge, como ya se ha indicado, a virtud de un examen de la planilla del contribuyente y una determinación del Tesorero de que el contribuyente *en la fecha en que rindió la planilla* debía una contribución sobre ingresos mayor, *bajo la ley que entonces regía,* a la que él declaró y pagó. Véase *Veeder* v. *Com-*

*missioner of Internal Revenue,* 36 F. (2) 342, 343, (C.C.A. 7th Cir., 1929). Ciertamente no hubo aquí, por tanto, una deficiencia en el sentido usual. El Tesorero no ha puesto en tela de juicio la veracidad de las planillas del peticionario y su esposa en la fecha en que se radicaron. La contribución adicional que ahora se reclama se hizo exigible por primera vez *después* que estas planillas habían sido radicadas, a virtud de las Leyes Núms. 31 y 159, Leyes de Puerto Rico, 1941, que disponían que sus disposiciones tendrían efecto retroactivo desde el 1 de enero de 1940. El mismo Tesorero en la 'Notificación y Requerimiento' la llama una contribución *nueva,* en vez de una contribución que el peticionario y su esposa debieron pagar y no pagaron a la época en que rindieron sus planillas el 15 de marzo de 1941.'' *Ballester* v. *Tribl. de Apelación,* 60 D.P.R. 768, 774.

Para resolver la tercera, o sea la de que para recurrir a esta Corte Suprema de la decisión del Tribunal de Apelación de Contribuciones es necesario acompañar al escrito de Apelación el recibo indicando la parte de la contribución pagada bajo protesta, requisito sin el cual no tendrá jurisdicción esta Corte, se invoca el artículo 76(*a*) de la Ley número 74 del 6 de agosto de 1925, como enmendado por la Ley número 23 del 21 de noviembre de 1941, (2) 89, que en lo pertinente dice:

''Cuando un contribuyente no estuviere conforme con la deficiencia o parte de la deficiencia determinada por el Tribunal de Apelación de Contribuciones de Puerto Rico de acuerdo con la sección 57 (*b*) de esta Ley, estará, no obstante, obligado a pagarla totalmente, y si deseare apelar para ante la Corte Suprema de Puerto Rico en la forma dispuesta por ley, al efectuar el pago protestará la parte de la deficiencia con la cual no estuviere conforme y pedirá al colector o funcionario recaudador que consigne su protesta al dorso del recibo de pago, indicando específicamente la parte de la contribución que se paga bajo protesta, y tal recibo o copia certificada del mismo deberán formar parte de su escrito de apelación para ante la Corte Suprema, requisito sin el cual no tendrá jurisdicción dicha Corte. . .''

Como puede verse la ley sólo se refiere a deficiencias exactamente igual que en su sección 57(*a*) interpretada en el referido caso de *Ballester,* supra.

No estando envuelta una deficiencia, claro es que el precepto legal invocado no es aplicable, y como ninguno otro se cita ni hemos podido encontrar nosotros que exija el previo pago bajo protesta, debemos resolver que dicho requisito no es necesario en casos de esta naturaleza en que se trata no de deficiencias sino de resoluciones administrativas, como quedó decidido en *Ballester,* supra, copiando del resumen, así:

"La actuación del Tesorero al determinar la contribución adicional bajo la Ley de Contribuciones sobre Ingresos, como fué enmendada por las Leyes Núms. 31 y 159 de 1941 ((1) págs. 479 y 973), y al enviar a los contribuyentes la 'Notificación y Requerimiento' en el caso, demandando de ellos el pago de la contribución, no constituye la determinación de una deficiencia de acuerdo con la sección 57(*a*) de esa ley como fué enmendada, sino una 'resolución administrativa' dentro del significado de la sección 4 de la Ley Núm. 172 de 1941 ((1) pág. 1039), revisable bajo dicha sección por el Tribunal de Apelación de Contribuciones."

Tampoco tiene razón en tal virtud el Tesorero en la tercera de las cuestiones que suscita.

Ahora bien, resuelto que el recurso procede en este caso sin necesidad del previo pago de la contribución bajo protesta, ¿qué efecto tiene el pago de la misma hecho por la contribuyente bajo protesta el 9 de enero de 1942, después de haber recurrido el 11 de diciembre de 1941 para ante el Tribunal de Apelación de Contribuciones contra la resolución del Tesorero?

Es un principio general que dinero que entra en las arcas del Tesoro Público a virtud de pagos voluntarios, no puede ser reclamado por la vía judicial, como cuestión de derecho. ¿Fué aquí el pago voluntario? ¿Basta la mera consignación de la protesta para que deje de serlo? Veámoslo.

Desde el 7 de abril de 1905 esta corte, en el caso de *Guerra* v. *El Tesorero de Puerto Rico,* 8 D.P.R. 292, resolvió, copiando del resumen, lo que sigue:

"El pago de contribuciones hecho por un contribuyente que no esté bajo coacción con respecto a su persona o a sus bienes, debe considerarse voluntario.

"Para que el contribuyente pueda salvar sus derechos a recobrar las cantidades satisfechas por contribuciones ilegalmente impuestas sobre sus bienes, debe esperar, para verificar el pago, hasta el momento en que se vea amenazado con una venta de sus bienes, y entonces hacer el pago con protesta, o ejercitar los recursos adecuados para evitar que tal venta se lleve a efecto.

"Las cantidades que voluntaria e inadvertidamente, y sin protesta alguna, se hubieren pagado al Tesorero, por concepto de contribuciones, y bajo una equivocada reclamación de derecho, no pueden ser recuperadas por la vía judicial, sino por la acción de la Legislatura."

En el curso de la opinión de la corte, emitida por su Juez Asociado Sr. MacLeary, se razonan esas conclusiones, como sigue:

"Ahora vamos a examinar la segunda proposición preliminar presentada por el apelante, de que los contribuyentes están imposibilitados de acudir a los tribunales en busca de auxilio en el presente caso, por haber pagado las contribuciones impuestas a los terrenos, y porque no pueden recobrar el dinero que han pagado voluntariamente a la Tesorería de la Isla. A esto contestan los apelados que aunque han pagado las contribuciones con regularidad, su petición dirigida al Tesorero en 8 de mayo de 1901, tenía el carácter de una protesta levantada antes de que la ley empezara a regir, y debe ser considerada como tal.

"Por cuanto la exención reclamada es por diez años, y no termina sino dentro de uno o dos años más, debe haber aún contribuciones sin pagar, y en cuanto a éstos a lo menos los contribuyentes tienen el derecho de objetar en debida forma. Pero como se trata en la petición de recobrar las sumas alegadas de haber sido pagadas con exceso de los ($18.60) dieciocho dólares sesenta centavos anuales, vamos a examinar la fuerza que debe darse a la proposición que nos ha presentado el fiscal de la Isla.

"En la discusión el eminente abogado representante de los contribuyentes dice sustancialmente lo siguiente:

"'El representante del Gobierno hace referencia a la opinión de un escritor a quien llama eminente autor de obras de derecho, res-

pecto a la materia de pagos voluntarios. Esas proposiciones carecen de solidez lógica y no están en armonía con el derecho estricto.'

"Oigamos lo que por sí mismo dice el libro de texto. Con respecto a la cuestión de pagos voluntarios, el Juez Cooley en su obra sobre imposición de contribuciones, consigna la ley como sigue:

"'Las autoridades están de acuerdo en general, en que no se puede recobrar una contribución que ha sido pagada voluntariamente. Y no importa en tal caso el que la contribución haya sido impuesta ilegalmente, ni aún que la ley en virtud de la cual fué impuesta era anticonstitucional. Dicho principio es un principio antiguo en la ley común, y es de aplicación general. Se supone que toda persona conozca la ley, y si espontáneamente efectúa un pago que la ley no la hubiese obligado a hacer, no podrá después alegar su ignorancia de la ley como razón por la cual el Estado debe suministrarle los recursos legales para recobrarlo. Especialmente es este el caso cuándo el funcionario receptor del dinero, a quien no se puede exigir más conocimientos de la ley que a la parte que efectúa el pago, no ha sido prevenido por una advertencia o protesta, y se entrega el dinero para el uso público con aparente aquiescencia en la justicia de la exacción. Un error de hecho puede apenas existir en semejante caso, excepto cuando haya mediado negligencia; puesto que las ilegalidades que hacen nula tal demanda, deben constar en los Registros, y tan obligado está el contribuyente a informarse de lo que demuestran o no demuestran los registros, como lo están las autoridades públicas. La regla de ley es también una regla de sana política pública; es así una regla de seguridad como de buena fe, e impide a los tribunales ocuparse en deshacer los convenios de las partes cuando hayan sido hechos voluntariamente, y cuando las partes no hayan sido impulsadas a celebrarlos por fraude o accidente, o por ignorancia excusable de sus derechos y obligaciones legales.

"'Se supone que todos los pagos son voluntarios mientras no se demuestre lo contrario. Ni es el mero hecho de que se haya pagado una contribución involuntariamente o con protesta de ninguna importancia legal, sino que en tal caso debe haber algún grado de compulsión a la cual el contribuyente se someta al tiempo de efectuar el pago pero con alguna clase de notificación que equivalga a una reserva de sus derechos. En algún caso se ha dicho que "las contribuciones ilegalmente recaudadas pueden ser siempre recobradas, si el colector es enterado por el pagador de que él considera la contribución como ilegal, y que entablará demanda para compeler su restitución;" pero se ha declarado repetidas veces que una simple

protesta, cuando el pago no se efectuó para evitar arresto o el embargo o la venta de mercancías, o por temor a un procedimiento que pudiera seguirse inmediatamente, no quitaría al pago el carácter de voluntario que se le presume. En algunos casos se ha declarado que un pago que se efectúa solamente para redimir terrenos del gravamen de una contribución, o para evitar la venta de terrenos, o para redimir terrenos de una venta realmente efectuada, no será considerado como un pago hecho bajo compulsión, y la parte que pagó no puede reclamarlo; pero esta opinión no ha sido asentida generalmente, y parece razonable que la regla sea restringida a los casos en que si se efectuase la venta, los procedimientos presentarían a primera vista defectos fatales. Una parte no debe ser expuesta a mayores riesgos de pérdida en liberar sus terrenos de una aparente duda con respecto al título que en proteger sus mercancías contra una venta ilegal.

" 'Cuando se habla de un pago voluntario, la palabra calificativa no se usa en su sentido ordinario, y muchos pagos son considerados como voluntarios, que se han hecho involuntariamente y sólo por una elección entre varios males o riesgos. Así, un pago ha sido declarado voluntario, cuyo pago fué efectuado por el dueño para salvar la propiedad de ser vendida, como él suponía, cuando en realidad el colector simuló proceder a la venta, pero con una autoridad nula a primera vista, y sin posesión o dominio de la propiedad. La misma decisión se ha dictado en un caso en que el funcionario amenazó con vender la propiedad para una contribución que aun no se debía, sin tener entonces el poder de llevar a efecto su amenaza. Asimismo en un caso en que un tribunal, sin autoridad para ello, expidió una orden para el pago de una contribución, cuyo pago se hizo de conformidad sin que la parte que se hallaba en esas circunstancias, estuviera bajo compulsión legal—dicho pago fué declarado voluntario. Del mismo modo, en un caso en que una persona en el día fijado para la venta de su propiedad para una contribución ilegal, ofreció efectuar el pago al día siguiente si la venta fuese aplazada, y tal aplazamiento tuvo lugar, efectuándose el pago según se había ofrecido, esto fué declarado pago voluntario. Y se ha declarado en algunos casos que cuando se trata de recobrar un pago como hecho bajo compulsión, se debe demostrar que dicho pago fué efectuado para rescatar ya una persona o ya una propiedad del poder del funcionario. Y esto puede decirse que expresa el sentido general de las autoridades.

" 'Las leyes en algunos estados han cambiado las reglas hasta cierto punto, y han permitido la recuperación en todos los casos de

contribuciones ilegales, siempre que al tiempo de efectuarse el pago, se hubiere formulado protesta según lo prescribe la ley. Con respecto a tales leyes solamente es necesario decir que la parte que se ampare en ellas, debe cuidar de que su caso esté dentro de las disposiciones de las mismas.' Cooley on Taxation, pp. 809, 810, 811, 812 y 813.

''✻        ✻        ✻        ✻        ✻        ✻        ✻

''En nuestra opinión, la ley tal como la consigna el Juez Cooley resuelve correctamente la cuestión de que, en cuanto se refiere a la recuperación de cualesquiera dineros ya ingresados en el Tesoro los contribuyentes no han practicado las diligencias necesarias para su propia protección. Los pagos efectuados por éstos deben considerarse como voluntarios. Los contribuyentes no estaban bajo ninguna clase de coacción ni en sus personas ni en su propiedad. Ellos debieron haber esperado, antes de efectuar el pago, hasta que se les hubiese amenazado con la venta de su propiedad, en cuyo momento para impedir tal venta pudieron efectuar el pago de las contribuciones bajo protesta, o solicitar un interdicto prohibitorio de la venta para las contribuciones que alegan ser ilegales, y todos los puntos planteados para su resolución en este pleito, pudieron ser decididos en aquella forma. Cuando voluntariamente y sin protesta se ha pagado, por inadvertencia, dinero al Tesoro en virtud de una errónea reclamación de derecho, se debe recurrir ante la Legislatura para conseguir la restitución, y no a los tribunales, que de este modo han perdido su jurisdicción sobre el asunto de que se trata.'' *Guerra* v. *El Tesorero de Puerto Rico*, 8 D.P.R. 292, 317–320, 321.

Y recientemente, en el caso de *Oliver* v. *Domenech, Tesorero,* 58 D.P.R. 64, 69, esta propia corte por medio de su Juez Asociado Sr. Travieso se expresó así:

''En el caso de autos los herederos fueron notificados de la valoración y cómputo el primero de marzo de 1939. Esa valoración y cómputo no podían ser firmes hasta que hubiese transcurrido el término de treinta días que el artículo 7 concede a los herederos para recurrir en alzada ante la junta. Una vez radicada dicha alzada, el Tesorero no podía exigir el pago de la contribución antes de que la Junta de Revisión e Igualamiento dictase su resolución. Dictada esa resolución, el Tesorero podía desde ese momento exigir el pago. Y entonces el único remedio de los herederos era el pago bajo protesta y recurrir a las cortes para recobrar la suma pagada. El pago hecho en el momento y en la forma en que se hizo en el presente caso es

un pago prematuro y voluntario que impide a los herederos de recurrir en alzada ante la junta.''

El pago hecho por la contribuyente el 9 de enero de 1942, cuando ya había recurrido para ante el Tribunal de Apelación de Contribuciones, no lo fué bajo compulsión. Ella no estaba bajo amenaza alguna de cobro inmediato. Tenía su caso sometido a la consideración y decisión del dicho tribunal, y podía esperar que fuera resuelto de acuerdo con la ley para actuar en definitiva. Bajo tales circunstancias el pago que hizo no puede considerarse sino voluntario, con todas las consecuencias que esa consideración lleva consigo, a saber: que ella misma, por su propio acto, abandonó su reclamación.

Quizás parezca contraria a la realidad e injusta esa conclusión, pero tal es la regla consagrada por la jurisprudencia a través de los años. Se trata a lo sumo de un error de derecho y sabido es que los errores de esa clase no dan lugar a la reclamación del pago de lo indebido. Véase *Quiñones v. Comisión Industrial*, 60 D.P.R. 447.

*Debe declararse no haber lugar a decretar la devolución de la contribución solicitada, devolviéndose el expediente remitido al Tribunal de Apelación de Contribuciones.*