The Royal Bank of Canada, peticionario, *v.* Tribunal de Contribuciones de Puerto Rico, demandado.

Núm. 45.—*Sometido:* Mayo 7, 1945. *Resuelto:* Noviembre 13, 1945.

*Brown, Newsom & Córdova* y *José L. Hernández,* abogados del peti-
cionario; *Hon. Procurador General Interino Julio Suárez Garriga*
y *M. Velázquez Flores, Procurador General Auxiliar,* abogados del
interventor, Tesorero Insular, querellado en el pleito principal.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tri-
bunal.

Este recurso fué interpuesto para revisar la decisión del
Tribunal de Contribuciones de Puerto Rico por la cual des-
estimó la querella presentada por The Royal Bank of Can-
ada contra resolución del Tesorero de Puerto Rico, de fecha
20 de octubre de 1941, desestimando cierta petición de reem-
bolso radicada por el Banco. Los hechos de este caso pue-
den sintetizarse así:

El 14 de febrero de 1941 el Banco presentó su planilla
de contribución sobre ingresos correspondiente al año com-
prendido entre el 1ro. de diciembre de 1939 y el 30 de no-
viembre de 1940, pagando en la misma fecha la contribución
sobre su ingreso neto a base del tipo de 14.375 por ciento
que regía para esa fecha tanto para las corporaciones do-
mésticas como para las extranjeras. Pero habiéndose apro-
bado el 12 de abril de 1941 la Ley núm. 31 de 1941 (pág.
479) con efecto retroactivo al 1ro. de enero de 1940, fijando
a las corporaciones extranjeras un tipo contributivo de 19
por ciento y a las domésticas de 17 por ciento, el 11 de julio
de 1941 el Tesorero dirigió al Banco una notificación exi-
giéndole el pago de una contribución adicional de $6,693.61

a base del tipo aumentado a 19 por ciento por ser el Banco una corporación extranjera. El 21 de julio de 1941 el Banco pagó al Tesorero dicha cantidad consignando que pagaba bajo protesta la suma de $2,894.54 representativa de la diferencia entre la contribución adicional al tipo de 17 por ciento impuesto a las corporaciones domésticas y el de 19 por ciento correspondiente a las extranjeras. El 9 de agosto de 1941 el Banco radicó una querella original ante el Tribunal de Apelación de Contribuciones solicitando la devolución de la contribución que alegaba haber pagado bajo protesta. El 14 de septiembre siguiente radicó ante el Tesorero una petición de crédito o reembolso de la misma suma. Como ya hemos indicado, esa petición de reembolso fué denegada por el Tesorero el 20 de octubre de 1941 y el 17 de noviembre siguiente, es decir, dentro de los treinta días de dictada la resolución del Tesorero, el Banco radicó ante el Tribunal de Apelación de Contribuciones una nueva querella para revisar esa decisión del Tesorero. La nueva querella fué enmendada el 17 de febrero de 1942.

El Tribunal de Contribuciones, el 2 de marzo de 1945, dictó resolución denegando la querella por el fundamento de que la contribución en este caso no había sido pagada bajo protesta, y que por consiguiente no podía reclamarse su devolución.

██ En *The Coca Cola* v. *Tribl. Contribuciones,* 65 D. P.R. 152, 154, 155, en que se levantó esta misma cuestión, dijimos:

"En su contestación alegó el Tesorero que el Tribunal de Contribuciones carecía de jurisdicción porque aunque la contribuyente decía haber pagado la contribución bajo protesta, el pago debía considerarse como voluntario, de conformidad con lo resuelto en *Blanco* v. *Tribl. de Apelación,* 61 D.P.R. 23 (1942). Alegó además el Tesorero que la contribución de 20 por ciento impuesta a las corporaciones extranjeras era constitucional.

"El Tribunal de Contribuciones se declaró sin jurisdicción para conocer del caso, y consecuentemente desestimó la querella, invocando

en apoyo de su resolución el caso de *Blanco* v. *Tribl. de Apelación*, supra, que sostiene que el pago de la contribución hecho bajo circunstancias similares a las del presente caso, no constituye uno bajo protesta, a pesar de que el contribuyente, al verificarlo, expresamente alegue que lo hace bajo protesta y se consigne así en el recibo de la contribución.

"Convenimos con el Tribunal de Contribuciones en que el pago en el presente caso fué voluntariamente hecho, pues al verificarlo la contribuyente no lo hizo por compulsión ni amenazas de embargo o de venta de sus bienes. *Blanco* v. *Tribunal de Apelación*, supra. Pero como hemos indicado, la reclamación de la peticionaria está basada en las secciones 64 y 75 de la Ley de Contribuciones sobre Ingresos,(¹) y esas secciones no requieren que para que proceda el reintegro la contribución haya sido pagada bajo protesta".

Es verdad que este Tribunal, en una línea de casos que se citan en *The Coca Cola* v. *Tribl. de Contribuciones*, supra, entre ellos el de *Yabucoa Sugar Co.* v. *Domenech*, 50 D.P.R. 692, confirmado por la Corte Suprema de los Estados Unidos (*Bonet* v. *Yabucoa Sugar Co.*, 306 U. S. 505 (1939)), sostuvo que la facultad conferida al Tesorero por el artículo 75 de la Ley de Contribuciones sobre Ingresos para verificar el reintegro era discrecional, y que por consiguiente contra esa resolución no podía recurrirse a los tribunales; pero como dijimos en *Coca Cola* v. *Tribl. de Contribuciones*, supra:

---

"(¹) La sección 64(*a*) prescribe en parte:

"'Cuando cualquier contribución sobre ingresos o beneficios excesivos impuesta por esta Ley . . . o por cualquiera otra ley, se hubiere pagado en exceso, el montante de dicho exceso será acreditado a cualquier contribución sobre ingresos o beneficios excesivos o a cualquier plazo de las mismas que estuviere vencido, y cualquier remanente de dicho exceso será reintegrado inmediatamente al contribuyente'.

"Y la sección 75 prescribe:

"'El Tesorero queda autorizado para remitir, reintegrar, y devolver todas las contribuciones errónea o ilegalmente impuestas o cobradas y las penalidades cobradas sin autoridad, y toda contribución que aparezca injustamente impuesta o en cantidad excesiva o de cualquier manera erróneamente cobrada; y hará un informe a la Legislatura de Puerto Rico al empezar cada sesión ordinaria, de todas las transacciones que en esta sección se autorizan'".

"... esa regla ha sido variada por la Ley núm. 169 de 15 de mayo de 1943 (pág. 601), vigente desde el 13 de agosto de 1943,(¹) que en su sección 3 prescribe:

" 'Todas las acciones, recursos o procedimientos que deban substanciarse ante el Tribunal de Contribuciones de Puerto Rico se iniciarán mediante instancia jurada de la persona o entidad recurrente ... dentro de los treinta días siguientes a la fecha de la notificación que a la misma haga el Tesorero de Puerto Rico, en cualquiera de los siguientes casos: ... (4) denegatorias de reembolso de cualquier contribución pagada indebidamente o en exceso o cobrada ilegalmente por cualquier otra causa; ...' ".(²)

" (2) La Asamblea Legislativa, al autorizar la revisión de la decisión del Tesorero, adoptó el procedimiento similar establecido en la Ley de Contribuciones sobre Ingresos federal.

"Véase a este efecto 10 Mertens, *Law of Federal Income Taxation*, sec. 58.47, pág. 350 *et seq.*, especialmente la sec. 58.52, pág. 361, que indica que no se requiere el pago bajo protesta".

██ Pero la nueva querella para revisar la resolución del Tesorero de 20 de octubre de 1941 fué radicada el 17 de noviembre siguiente, es decir, un año, ocho meses y veintisiete días antes de que por la Ley núm. 169 de 15 de mayo de 1943 se concediese apelación contra las denegatorias de reembolso. En tales circunstancias debemos determinar si el derecho de apelación concedido por la Ley de 15 de mayo de 1943 puede retrotraerse a denegatorias de reintegro decididas más de treinta días antes de la vigencia de esa ley.

En el caso de *The Coca Cola* v. *Tribl. de Contribuciones*, supra, la solicitud de reintegro fué denegada el 23 de julio de 1943 y de esa resolución apeló la contribuyente el 16 de agosto siguiente, es decir, dos días después de la vigencia de la Ley núm. 169 de 15 de mayo de 1943 y dentro de los treinta días que ésta concede para solicitar la revisión de la denegatoria de reembolso. Pero en el caso de autos la reso-

(¹) El cálculo que se hizo en *The Coca Cola* v. *Tribl. de Contribuciones*, con respecto a la vigencia de la ley, es erróneo, pues computando los noventa días excluyendo el 15 de mayo de 1943 en que fué aprobada la ley e incluyendo el último de los noventa días contados a partir de esa fecha, la vigencia de la Ley no empezó hasta el 14 de agosto de 1943.

lución denegando el reintegro se dictó, como ya hemos indicado, el 20 de octubre de 1941, y de esa resolución apeló la contribuyente el 17 de noviembre de 1941, o sea, un año, ocho meses y veintisiete días antes de la vigencia de la Ley núm. 169 de 15 de mayo de 1943.

En el caso de *Mason* v. *White Star Bus Line*, 53 D.P.R. 337, 340, refiriéndonos a la retroactividad de las leyes procesales, dijimos:

"La regla general invocada por la apelante al efecto de que las leyes de carácter procesal tienen efecto retroactivo y se aplican tanto a los casos pendientes en la fecha de su aprobación como a los futuros, está muy bien establecida y universalmente aceptada. Pero es regla de oro en materia de interpretación de leyes que el objeto primordial de todas las reglas de hermenéutica no es conseguir un objeto arbitrario preconcebido, sino dar efecto al propósito del legislador. *Spicer* v. *Benefit Asso. R. E.*, 90 A.L.R. 517, 522. En armonía con este principio, la regla general invocada por la apelante, como todas las de su clase, tiene una excepción, y es que no se da efecto retroactivo a las leyes procesales cuando de la propia ley resulta expresa o implícitamente que no fué ésa la intención del legislador. *Paulsen* v. *Reinecke*, 97 A.L.R. 1184, 1186; *Stallings* v. *Stallings*, 148 So. 687, 689."

Aplicando al presente caso los principios enunciados en el de *Mason*, supra, fuerza es concluir que el estatuto que nos ocupa, a pesar de ser de carácter adjetivo, no es de aplicación: en primer término, porque el caso de autos no estaba pendiente cuando se aprobó la Ley núm. 169 de 15 de mayo de 1943, y en segundo lugar, porque de la propia ley fácilmente puede inferirse que no fué la intención del legislador restablecer todos los casos decididos al amparo de la legislación anterior más de treinta días antes de su vigencia, ya que esa situación crearía un caos, pues resurgiría una multitud de reclamaciones contra el Tesorero que ya habían sido definitivamente adjudicadas.

Es verdad que en el caso de autos el Banco radicó un escrito de apelación dentro de los treinta días siguientes a

la denegatoria de reembolso, pero como en aquella fecha no existía el derecho de revisión que vino a concederse un año y más de ocho meses después, ese escrito de apelación no le dió derecho alguno al peticionario para mantener vivo un caso que ya había sido definitivamente resuelto por una decisión que, desde que se dictó, fué firme, ni lo colocó en situación más ventajosa que la de aquéllos, que siguiendo la la ley entonces en vigor, acataron la decisión del Tesorero.

*Por las razones expuestas procede confirmar la decisión del Tribunal de Contribuciones.*