STANDARD OIL COMPANY (NEW JERSEY), peticionaria, *v.* TRIBU-NAL DE CONTRIBUCIONES DE PUERTO RICO, demandado.

Núms. 17 y 37.—*Sometidos:* Diciembre 14, 1944. *Resueltos:* Marzo 14, 1945.

Hon. *Procurador General Interino Jesús A. González, Ramón Gandía Biscombe, Oficial Jurídico y A. D. Marchand Paz, Procurador General Auxiliar*, abogados del interventor, Tesorero de Puerto Rico; *James R. Beverley, R. Castro Fernández y José López Baralt*, abogados de la peticionaria; *Hartzell, Kelley & Hartzell y José L. Novas*, como *amici curiae*.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

La peticionaria, Standard Oil Company (New Jersey), es una corporación organizada de acuerdo con las leyes del Estado de New Jersey y tiene establecida su oficina principal en la Ciudad y Estado de Nueva York. En el año 1940 dicha corporación recibió la suma de $325,140 por concepto de dividendos sobre sus acciones en la West India Oil Co. (P. R.). Al aprobarse la Ley núm. 31 de abril 12 de 1941 ((1) pág. 479), con efecto retroactivo al 1 de enero de 1940, la peticionaria radicó con el Tesorero una declaración enmendada de sus ingresos en el año 1940 y pagó al Tesorero una contribución igual al 17 por ciento del montante de los dividendos recibidos.

En abril 27 de 1942 el Tesorero notificó a la peticionaria una deficiencia de $6,502.80, basándose en que de acuerdo con la citada ley de 1941 la peticionaria, por ser una corporación extranjera, estaba obligada a pagar una contribución igual al 19 por ciento, o sea 2 por ciento mayor que la impuesta a las corporaciones domésticas.

Llevado el caso en apelación ante el Tribunal de Contribuciones, éste dictó su decisión en 30 de junio de 1944 sosteniendo la validez constitucional de la ley en cuanto al tipo de 19 por ciento que en ella se prescribe para ser aplicado a las corporaciones o sociedades extranjeras sin punto de negocios u oficina establecida en Puerto Rico. El tribunal ordenó al Tesorero que hiciese un nuevo cálculo de la contribución, con intereses al 6 por ciento anual desde el 27 de abril de 1942, debiendo radicarse los cómputos correspondientes dentro del plazo de siete días desde la fecha de la notificación de la decisión. Esta fué notificada a las partes el 24 de julio de 1944. En agosto 23 de 1944, sin esperar a que el Tesorero radicase el nuevo cómputo de la contribución, la corporación peticionaria radicó ante esta Corte Suprema una solicitud de *certiorari*, la cual fué registrada bajo el núm. 17.

El nuevo cómputo, ascendente a un total de $11,438.43, fué radicado por el Tesorero el 18 de septiembre, aprobado por el tribunal el 22 de noviembre y notificado a la peticionaria el día 27 de noviembre de 1944. El día 26 de diciembre de 1944 la peticionaria hizo el pago bajo protesta, y el 28 del mismo mes recurrió por segunda vez ante esta Corte Suprema en solicitud de un auto de certiorari, radicándose el caso bajo el núm. 37.

Nos encontramos, pues, ante dos recursos de certiorari incoados con el mismo fin—la revisión de la decisión del Tribunal de Contribuciones de fecha 30 de junio de 1944. El primero, núm. 17, fué radicado dentro del plazo de treinta días contados desde la fecha de la notificación de la decisión,

de acuerdo con la sección 5 de la Ley núm. 169 de mayo 15, 1943 (pág. 601) ; y el segundo, núm. 37, después de notificada a la apelante la finalidad de la decisión, de acuerdo con las Reglas de Procedimiento aprobadas por el Tribunal de Contribuciones de Puerto Rico.

La cuestión a resolver es sobre cuál de los dos recursos debe subsistir y cuál debe ser desestimado. El Tesorero ha solicitado la desestimación del núm. 17, por no haberse radicado junto con la petición el recibo acreditativo de haberse hecho el pago bajo protesta, requisito que a su juicio es indispensable—de acuerdo con la sección 76 de la Ley de Contribuciones sobre Ingresos, según quedó enmendada por la Ley núm. 23 de noviembre 21 de 1941—para que esta Corte Suprema pueda adquirir jurisdicción sobre el caso. Se opone la peticionaria a la desestimación, alegando:

"Nuestra contención es que el recurso radicado bajo el Núm. 17 es el que ha sido debidamente radicado, pero ante el peligro que conlleva la equivocación, y sobre todo, ante la situación tan confusa creada por la Ley 169 de 1943, la sección 76 de la Ley de Contribuciones sobre Ingresos, según enmendada por la 23 aprobada en noviembre 21, 1941 y la Regla Núm. 29 de las Reglas de Procedimientos del Tribunal de Contribuciones de Puerto Rico, creemos estar profesionalmente justificados en asumir la posición que hemos asumido para la mayor protección de los intereses de nuestro cliente, radicando dos recursos de certiorari: . . . . ".

Examinemos las disposiciones legales citadas.

 La sección 76 de la Ley de Contribuciones sobre Ingresos (Núm. 74 de agosto 6, 1925, pág. 401) según quedó enmendada por la Ley 23 de 21 de noviembre de 1941 ((2) pág. 73), en lo que es pertinente, lee así:

"Sección 76.—(a) Cuando un contribuyente no estuviere conforme con la deficiencia o parte de la deficiencia determinada por el Tribunal de Apelación de Contribuciones de Puerto Rico de acuerdo con la sección 57(b) de esta Ley, estará, no obstante, obligado a pagarla totalmente, y si deseare apelar para ante la Corte Suprema de Puerto Rico en la forma dispuesta por ley, al efectuar

el pago protestará la parte de la deficiencia con la cual no estuviere conforme y pedirá al colector o funcionario recaudador que consigne su protesta al dorso del recibo de pago, . . . y tal recibo o copia certificada del mismo deberán formar parte de su escrito de apelación para ante la Corte Suprema, *requisito sin el cual no tendrá jurisdicción dicha corte.''* (Itálicas nuestras.)

La Ley núm. 172 de mayo 13 de 1941 ((1) pág. 1039), creando el Tribunal de Apelación de Contribuciones de Puerto Rico, aprobada con anterioridad a la enmienda de la sección 76 de la Ley de Contribuciones Sobre Ingresos, supra, disponía:

''Sección 5.— . . . Estas decisiones tendrán el carácter de finales; pero la parte perjudicada podrá dentro de los treinta (30) días *después de haberse rendido la decisión apelar de la misma* para ante el Tribunal Supremo de Puerto Rico, *mediante una solicitud de certiorari* para revisar los procedimientos. El Tribunal Supremo de Puerto Rico tendrá jurisdicción competente para esta revisión, fundándose exclusivamente en los autos, pero la expedición del auto no tendrá el efecto de suspender la ejecución de la decisión dictada, la cual será efectiva desde luego, hasta tanto recaiga decisión final confirmándola o modificándola.'' (Bastardillas nuestras.)

La sección 57 de la Ley de Contribuciones Sobre Ingresos, según fué enmendada por la Ley 23 de 21 de noviembre de 1941, es la que dispone el procedimiento que deberá seguir Contribuciones. El apartado (*b*) de dicha sección prescribe del Tesorero respecto a cualquier deficiencia, para que dicha resolución sea revisada por el Tribunal de Apelación de Contribuciones. El apartado (*b*) de dicha sección prescribe que ''cuando habiéndose recurrido para ante el Tribunal de Apelación de Contribuciones de Puerto Rico en la forma dispuesta por esta Ley, *dicho tribunal determinare que existe una deficiencia, la cantidad determinada por el tribunal* será impuesta por el Tesorero con intereses a razón del 6 por ciento anual, etc.'' (Bastardillas nuestras.)

De acuerdo con los preceptos estatutarios citados, es evidente que mientras estuvo vigente la ley creadora del Tribu-

nal de Apelación de Contribuciones, el contribuyente que no estando conforme con la decisión de dicho tribunal determinando que existía una deficiencia deseaba apelar para ante la Corte Suprema, venía obligado a radicar su solicitud de certiorari "dentro de los treinta (30) días después de haberse rendido la decisión", estando igualmente obligado a pagar el importe de la deficiencia determinada por el tribunal y a radicar junto con la petición de certiorari el recibo acreditativo de haber hecho el pago bajo protesta.

Arguye la peticionaria que la enmienda a la Sección 76 de la Ley de Contribuciones Sobre Ingresos, supra, se hizo con el objeto de proveer el procedimiento para apelar de una deficiencia determinada por el Tribunal de Apelación de Contribuciones; que habiendo dejado de existir dicho tribunal por virtud de la Ley 169 de 1943, creadora del Tribunal de Contribuciones de Puerto Rico, y disponiéndose en la sección 5 de dicha ley el procedimiento a seguir para revisar las decisiones del nuevo tribunal y no habiendo la Legislatura enmendado de nuevo la sección 76 de la Ley de Contribuciones Sobre Ingresos, como lo hizo después de la creación del Tribunal de Apelación de Contribuciones, es evidente que la legislatura tuvo el propósito de derogar la sección 76, supra, y de exigir como único requisito para que la Corte Suprema adquiera jurisdicción, que el recurso de revisión se radique dentro de los treinta días después de notificada la decisión del Tribunal. Y añade, que ello debe ser así, porque en el último párrafo de la sección 5 de dicha Ley 169 de 1943 se dispone que la expedición del auto de certiorari no tendrá "el efecto de suspender la ejecución de la decisión dictada", disposición que sería innecesaria si el contribuyente viniese obligado a hacer el pago bajo protesta para poder solicitar la revisión.

No estamos conformes con la argumentación de la peticionaria. El propósito de la Ley núm. 169 de mayo 15 de 1943 no fué el de derogar la Ley núm. 172 de mayo 13 de

1941, por la cual se creó el Tribunal de Apelación de Contribuciones, y sí el de enmendar dicha ley para que en lo sucesivo lea en la forma en que quedó redactada. La sección 5 de la nueva ley, en cuanto es pertinente, dice así:

"Todas las decisiones del Tribunal de Contribuciones tendrán carácter de finales; pero la parte perjudicada podrá, dentro de los treinta (30) días *después de habérsele notificado la decisión,* interponer contra la misma recurso de revisión ante el Tribunal Supremo de Puerto Rico, mediante solicitud de certiorari para revisar los procedimientos, y dicho Tribunal sustanciará dichos recursos fundándose exclusivamente en los autos del Tribunal recurrido, sin que la expedición del auto tenga el efecto de suspender la ejecución de la decisión dictada, la cual será efectiva desde luego, hasta tanto recaiga decisión final confirmándola o modificándola." (Bastardilla nuestras.)

Comparando la sección 5 en su forma original, supra, con la enmienda, se verá que ambas son prácticamente idénticas, con las dos excepciones siguientes: (1) que el término de 30 días para recurrir al Tribunal Supremo deberá contarse desde la fecha en que se notifique la decisión al contribuyente y no desde la fecha en que se rinda la decisión, como se disponía en la sección original; y (2) que las decisiones del Tribunal de Contribuciones son ahora resivables mediante solicitud de certiorari, y no apelables mediante certiorari como disponía la ley anterior.

La Ley núm. 169 de 1943 dispone por su artículo 3 que "Toda ley, resolución, o parte de las mismas, que esté en conflicto con la presente, queda por ésta derogada". No existe, a nuestro juicio, conflicto alguno entre la sección 5 de la Ley 169 de 1943 y la sección 76(a) de la Ley de Contribuciones Sobre Ingresos, supra. Ambas son perfectamente compatibles y también necesarias para la efectividad del derecho que la ley reconoce a todo contribuyente para recurrir ante el Tribunal Supremo en solicitud de que la decisión dictada en su contra sea revisada. Resolvemos, por lo tanto, que cuando un contribuyente no estuviere conforme con la

deficiencia determinada o fijada por el Tribunal de Contribuciones, de acuerdo con la sección 57(*b*) de la Ley de Contribuciones Sobre Ingresos, y deseare solicitar la revisión por el Tribunal Supremo, deberá presentar junto con la petición de certiorari el recibo acreditativo de haber pagado el importe de la deficiencia, bajo protesta, siendo éste un requisito legal necesario para que la Corte Suprema pueda conocer del caso.

El escrito de apelación en el recurso núm. 17 fué radicado en agosto 23, 1944, dentro de los treinta días siguientes a la notificación de la decisión, de acuerdo con lo dispuesto por la sección 5 de la Ley núm. 169 de mayo 15 de 1943. El recibo acreditativo del pago bajo protesta no fué ni pudo ser radicado junto con el escrito de apelación, porque en la decisión dictada por el tribunal se ordenaba al Tesorero que hiciese un nuevo cómputo de la cantidad adeudada por la peticionaria, dentro de los siete días siguientes a la fecha en que le fuera notificada la decisión; y, según aparece de los autos, el Tesorero no notificó el nuevo cómputo a la peticionaria hasta el día 20 de septiembre de 1944.

En *Casanovas & Cía.* v. *Tribunal de Apelación de Contribuciones,* 61 D.P.R. 56, la contribuyente peticionaria radicó dentro del término legal su petición de certiorari, pero no radicó el recibo acreditando haber hecho el pago bajo protesta. El Tesorero solicitó la anulación del auto expedido por el fundamento de no haberse radicado dicho recibo, requisito esencial para que la Corte Suprema tuviera jurisdicción. Resolviendo la cuestión así planteada, esta corte, por voz de su Juez Asociado Sr. de Jesús, se expresó así:

"Como hemos visto, de conformidad con la sección 76 *a* en lo pertinente transcrita, el recibo del pago bajo protesta o una copia certificada del mismo deberá formar parte del escrito de apelación, es decir, de la petición de certiorari para ante este tribunal, *y sin ese requisito esta corte no adquiere jurisdicción.* Siendo ello así, cuando el 28 de mayo último la peticionaria radicó el escrito de certiorari sin acompañarlo de los recibos, dicho escrito, por mandato expreso

de la ley, no nos confirió jurisdicción para la expedición del auto de certiorari. Ese mismo defecto de jurisdicción subsistía cuando el 2 de junio último se notificó el auto al tribunal recurrido.''

En el citado caso, la peticionaria trató de subsanar el defecto jurisdiccional, radicando en junio 12 una llamada ''Alegación Suplementaria'', acompañada de los recibos de pago bajo protesta, alegando que esta corte había adquirido jurisdicción con efecto retroactivo al 29 de mayo, fecha de la expedición. Esta contención fué rechazada en los siguientes términos:

''No tuvo tal efecto, porque una orden dictada sin jurisdicción es inexistente y lo inexistente no es susceptible de convalidación con efecto retroactivo. Siendo nula la citada orden de 29 de mayo último, todas las actuaciones posteriores que de ella emanan son necesariamente nulas, incluyendo, por supuesto, el acto de la vista de este recurso celebrada el 24 de junio último.''

En el recurso Núm. 17 que estamos considerando, la peticionaria no ha radicado en momento alguno el recibo demostrativo de haberse hecho el pago bajo protesta. De conformidad con lo resuelto en *Casanovas & Cía.* v. *Tribunal de Apelación de Contribuciones,* supra, dicho recurso debe ser desestimado por falta de jurisdicción.

La solicitud de certiorari en el recurso número 37 fué radicada el 28 de diciembre de 1944, acompañada de un recibo en el que se hace constar que en diciembre 26 de 1944 la corporación peticionaria pagó bajo protesta la cantidad de $11,438.43.

En el caso de *González* v. *Tribunal de Apelación de Contribuciones,* 60 D.P.R. 901, el peticionario radicó tres recursos de certiorari, alegando que no había podido pagar contribución alguna bajo protesta, porque el Tesorero no le había aún impuesto la contribución ni había hecho el cómputo de acuerdo con lo dispuesto en las reglas 42 y 43 de las Reglas de Práctica de dicho tribunal. Los tres recursos fueron

desestimados por prematuros, expresándose el tribunal, por voz de su Juez Asociado Sr. Todd, Jr., en la forma siguiente:

"[4, 5] Al disponer la sección 57(b), supra, que si el Tribunal de Apelación de Contribuciones determinare que existe una deficiencia la cantidad determinada será impuesta por el Tesorero, claramente significa que en la decisión que dicte dicho tribunal debe incluirse expresamente el montante de la deficiencia para que así el contribuyente pueda saber cuál es la cantidad exacta que tiene que pagar bajo protesta de acuerdo con la sección 76(a), supra, para perfeccionar su apelación para ante esta Corte Suprema. Los treinta días que se conceden al contribuyente para apelar de la decisión del Tribunal de Apelación de Contribuciones por la sección 5 de la Ley núm. 172, supra, no pueden empezarse a contar hasta que exista una decisión completa y final y que contenga todo lo que la ley y las reglas del tribunal exigen. Que sólo puede apelarse de una desición que tenga el carácter de final, lo dice el propio 'estatuto, sección 5, Ley núm. 172, supra."

La Regla núm. 42 de las Reglas de Práctica aprobadas por el Tribunal de Contribuciones dispone, entre otras cosas, que la decisión del tribunal constará de las siguientes partes: "(d) Cómputo de la contribución, deficiencia o responsabilidad que se archivará con la decisión del caso de acuerdo con la Regla Núm. 43".

La Regla núm. 43 dispone que la decisión *se registrará* por el Secretario al notificar a las partes; que el Tesorero computará la contribución haciendo la imposición de acuerdo con la decisión del tribunal y radicará el cómputo original y seis copias en la secretaría, certificando que ha notificado al apelante; que si dentro de los diez días siguientes a la fecha del cómputo, el apelante no radicare oposición, "el Secretario registrará dicho cómputo y lo archivará como parte de la decisión del tribunal de acuerdo con la Regla Núm. 42". Dicha regla provee, además, que en el caso en que se radicare oposición al cómputo, "el tribunal fijará una vista para oír a las partes y en tal caso el tribunal directamente computará la contribución, deficiencia o responsabilidad".

En el caso de autos, la corporación apelante formuló su objeción al cómputo del Tesorero en septiembre 26 de 1944. La vista se celebró el seis de octubre de 1944, y el 22 de noviembre de 1944 el tribunal dictó su resolución declarando sin lugar la objeción y aprobando el cómputo.

Ni la ley ni las reglas del Tribunal de Contribuciones disponen expresamente que cuando el cómputo de la deficiencia es hecho por el tribunal directamente, dicho cómputo deba ser registrado y archivado como parte de la decisión del tribunal. Opinamos, sin embargo, que si de acuerdo con la regla 42 el cómputo de la deficiencia debe formar parte de la decisión del caso, y de conformidad con la regla 43 ''la decisión se registrará por el secretario· al notificar a las partes'', la única decisión que el Secretario puede legalmente notificar a las partes y registrar como la decisión completa y final del tribunal es una que contenga como parte esencial de la misma el cómputo definitivamente aprobado por el tribunal. Cuando la decisión conteniendo el cómputo haya sido registrada por el Secretario, desde ese momento empezará a correr el término de 30 días fijado por la sección 5 de la Ley 169 de mayo 15 de 1943 para la radicación ante esta Corte Suprema de una petición de certiorari. La parte agraviada podrá, sin embargo, radicar su petición de certiorari tan pronto como el cómputo haya sido aprobado por resolución del tribunal, sin tener que aguardar a que la sentencia sea registrada. (Véase: *González* v. *Tribunal de Apelación,* 60 D.P.R. 901). En los casos de *González,* supra, sostuvimos que los recursos habían sido interpuestos prematuramente, porque en la fecha en que fueron radicados, los cómputos finales no habían sido aún aprobados por resolución del tribunal.

De los autos originales del Tribunal de Contribuciones aparece que la resolución aprobando el cómputo fué notificada a la apelante, pero no existe en ellos constancia alguna de que la decisión del tribunal y el cómputo definitivo hayan

sido registrados o archivados como la decisión completa y final del tribunal. Debemos resolver, por lo tanto, que el recurso número 37 fué interpuesto oportunamente.

██ Con el propósito de orientar a la profesión legal y evitar en el futuro la duplicidad de procedimientos, pasaremos a exponer la norma que a nuestro juicio debe seguirse para traer a la cosideración de esta Corte Suprema un recurso de certiorari para revisar una decisión del Tribunal de Contribuciones.

1. Cuando la decisión del tribunal, determinando la existencia de una deficiencia, no ordene al Tesorero que haga un nuevo cómputo de la cantidad que el contribuyente deberá satisfacer al Tesoro Insular, el contribuyente que no estuviere conforme y deseare solicitar la revisión por la Corte Suprema, deberá radicar su petición de certiorari dentro de los treinta (30) días de habérsele notificado la decisión, de acuerdo con la sección 5 de la Ley núm. 169 de mayo 15 de 1943 y de haberse registrado la decisión de acuerdo con la Regla 43; y deberá radicar junto con la petición y dentro del mismo plazo de treinta días, el recibo o copia certificada del mismo que acredite haberse hecho el pago bajo protesta, de acuerdo con la sección 76 de la Ley de Contribuciones Sobre Ingresos. Ambos requisitos deberán cumplirse para que la Corte Suprema adquiera jurisdicción.

2. Si por la decisión del tribunal se ordenare al Tesorero un nuevo cómputo para poder determinar el montante de la deficiencia que deberá satisfacer el contribuyente, el término legal de treinta días para radicar la petición de certiorari y el recibo acreditativo del pago bajo protesta deberá contarse desde la fecha de la notificación al contribuyente del nuevo cómputo y del registro y archivo de dicho cómputo como parte de la decisión final del tribunal. Nos permitimos sugerir que la mejor práctica en estos casos sería la de no registrar la decisión del tribunal hasta que el nuevo cómputo

haya sido definitivamente aprobado por el tribunal y regis-
trado y archivado por el Secretario como parte de la decisión.

*Por las razones expuestas se desestima el recurso de
certiorari Núm. 17. El recurso de certiorari Núm. 37
seguirá su tramitación y habiendo sido ya sometido, será
resuelto oportunamente.*