JUAN J. GERARDINO, peticionario, *v.* TRIBUNAL DE CONTRIBUCIONES DE PUERTO RICO, demandado; R. BUSCAGLIA, TESORERO DE PUERTO RICO, interventor.

Núm. 138.—*Sometido:* Noviembre 3, 1947. *Resuelto:* Febrero 20, 1948.

*Alberto Gerardino,* abogado del peticionario; *Hon. Procurador General Luis Negrón Fernández,* y *Carlos Santana Becerra* y *Elmer Toro Lucchetti, Procuradores Generales Auxiliares,* abogados del interventor, querellado en el pleito principal.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

La cuestión aquí envuelta es si el Tribunal de Contribuciones cometió error al desestimar por falta de jurisdicción la demanda radicada por el peticionario solicitando el reintegro de $26,399.17, suma ésta que incluía arbitrios, intereses y penalidades.

La contestación a esta pregunta depende de si el Tribunal de Contribuciones actuó correctamente al resolver (1)

que el estatuto especial para el reintegro de arbitrios no era el remedio exclusivo de que disponía un contribuyente, sino que tales pleitos podían también radicarse bajo la Ley núm. 169 que creó el Tribunal de Contribuciones; y (2) que si bien existían dos remedios, bajo las circunstancias del presente caso el único remedio disponible al peticionario era el provisto por el estatuto especial y en su consecuencia el no haber cumplido con sus términos privó al Tribunal de Contribuciones de jurisdicción para decidir el caso bajo el remedio alternativo hallado en el inciso 4 de la sección 3 de la Ley núm. 169.

■■ Examinemos primeramente la historia legislativa de las leyes pertinentes. Antes de aprobarse la Ley núm. 169, Leyes de Puerto Rico, 1943 (pág. 601), el remedio judicial para solicitar el reintegro de arbitrios era exclusivo y sencillo. Bajo la Ley núm. 8, Leyes de Puerto Rico, 1927 (pág. 123), si un contribuyente creía que no debía ciertos arbitrios y deseaba litigar la cuestión, éste venía obligado a pagarlos bajo protesta al así requerírsele el correspondiente colector de rentas internas y demandar la devolución dentro de un año ante una corte de jurisdicción competente.

Luego, la Legislatura creó el Tribunal de Apelación de Contribuciones. Ley núm. 172, Leyes de Puerto Rico, 1941 ((1) pág. 1039). Pero dicho Tribunal, bajo el inciso 4, tenía jurisdicción solamente sobre los casos que envolvían la imposición de contribuciones sobre la propiedad, ingresos y herencia. No tenía jurisdicción sobre los casos de reintegro en general ni sobre los casos de arbitrios. La Ley núm. 172, en consecuencia, no tuvo efecto alguno sobre la núm. 8.

Varios meses después de haber aprobado la Ley núm. 172 de 1941, la Legislatura enmendó la Ley núm. 8 mediante la Ley núm. 17, Leyes de Puerto Rico, 1941, Sesión Extraordinaria (pág. 55). Sin embargo, a pesar de la creación del Tribunal de Apelación de Contribuciones mediante la Ley núm. 172, la Ley núm. 17 no confirió jurisdicción a dicho Tri-

bunal sobre pleitos por devolución de arbitrios. Bajo la Ley núm. 17 la jurisdicción sobre tales pleitos continuó en la corte de distrito; pero el término dentro del cual radicar el pleito después del requerimiento y el pago bajo protesta fué acortado de un año a treinta días. Véase *Axton Fisher Tobacco Co.* v. *Buscaglia, Tes.,* 65 D.P.R. 410.

Dos años después, la Legislatura abolió el Tribunal de Apelación de Contribuciones y creó en su lugar el Tribunal de Contribuciones. Ley núm. 169, Leyes de Puerto Rico, 1943. A nuestros fines, la Ley núm. 169 efectuó dos cambios: (1) privó a las cortes de distrito de jurisdicción sobre casos de arbitrios, la cual bajo la sección 4 se confería ahora exclusivamente al Tribunal de Contribuciones; (2) las secciones 3 y 4 ampliaron la jurisdicción del nuevo Tribunal para que incluyera los pleitos de reintegros sobre los cuales el anterior Tribunal de Apelación de Contribuciones no tenía jurisdicción.(¹)

Antes de que se aprobara la Ley núm. 169, no existía remedio judicial para que un contribuyente pudiera recobrar cualquier suma pagada voluntariamente en exceso con respecto a cualquier clase de contribución. Las secciones 64 y 75 de la Ley de Contribuciones sobre Ingresos siempre han autorizado al Tesorero a devolver los excesos pagados en contribuciones sobre ingresos; pero no existía remedio judicial alguno para revisar su resolución administrativa denegando tal petición de reintegro. *Bonet* v. *Yabucoa Sugar Co.,* 306 U.S. 505; *Mayagüez Light, Power & Ice Co.* v. *Bus-*

(¹)En la sección 4 la Legislatura dispuso que el Tribunal de Contribuciones tendría jurisdicción sobre casos de "reembolso de toda clase de contribuciones . . . así como para conocer de las reclamaciones de contribuciones pagadas indebidamente o en exceso o cobradas ilegalmente, cuyo reembolso se haya rehusado por el Tesorero." Y en la sección 3 dispuso que dentro de los treinta días siguientes a la fecha de la notificación que a la misma haga el Tesorero, un contribuyente podrá iniciar ante el Tribunal de Contribuciones una reclamación basada en ". . . (4) Denegatoria de reembolso de cualquier contribución pagada indebidamente o en exceso o cobrada ilegalmente por cualquier otra causa . . . ".

*caglia, Tes.,* 59 D.P.R. 709. De igual modo, la Ley de febrero 12, 1904 (pág. 167) siempre ha autorizado al Tesorero a reintegrar contribuciones de todas clases pagadas indebidamente o en exceso; pero no podía instituirse pleito alguno para revisar la decisión del Tesorero al denegar éste la solicitud de reintegro. *R. Santaella & Bros.* v. *Tribunal de Contribuciones,* 66 D.P.R. 868; *Cía. Ron Carioca* v. *Tribunal de Contribuciones,* 67 D.P.R. 708.

Sin embargo, la Legislatura llegó a la conclusión de que no era suficiente el remedio administrativo provisto bajo las secciones 64 y 75 de la Ley de Contribuciones sobre Ingresos y bajo la Ley de 1904([2]) para obtener el reintegro por el pago de contribuciones en exceso. Por tanto, en 1943 creó un remedio judicial para el reintegro de las sumas pagadas en exceso en toda clase de contribuciones, que hasta entonces no había existido para ninguna clase de contribución. Sección 3, inciso 4, Ley núm. 169. Bajo el inciso 4 un contribuyente que hiciera un pago en exceso en su contribución sobre ingresos, podía solicitar del Tesorero el reintegro de conformidad con las secciones 64 y 75 de la Ley de Contribuciones sobre Ingresos. Si el Tesorero denegaba su petición, podía ahora por primera vez obtener la revisión judicial de esta decisión bajo el inciso 4, siempre y cuando que radique su querella dentro de 30 días después de la decisión del Tesorero denegando su solicitud de reintegro. *The Coca Cola Co.* v. *Tribunal de Contribuciones,* 65 D.P.R. 152; *Royal Bank* v. *Tribunal de Contribuciones,* 65 D.P.R. 345. De igual manera, después de la aprobación de la Ley de 1904, un contribuyente podía solicitar del Tesorero el reintegro de cualquier otra clase de contribuciones. Y por primera vez el inciso 4 proveyó la revisión por el Tribunal de Contribuciones dentro de 30 días de una resolución administrativa del Tesorero denegando tal reintegro. *R. Santaella & Bros.* v. *Tri-*

---

([2]) Véanse también los estatutos citados en *Cía. Ron Carioca* v. *Tribunal de Contribuciones,* supra, pág. 716, nota 3.

*bunal de Contribuciones,* supra; *Cía. Ron Carioca* v. *Tribu-
nal de Contribuciones,* supra.

Tan pronto quedó establecido que un contribuyente tenía
derecho bajo el inciso 4 a recurrir ante el Tribunal de Contri-
buciones en solicitud de la devolución de excesos pagados en
toda clase de contribuciones, surgió la cuestión en cuanto al
período dentro del cual debe radicarse la reclamación de re-
integro con el Tesorero. No había problema en relación a
contribuciones sobre ingresos. La sección 64(*b*) de la Ley
de Contribuciones sobre Ingresos siempre ha provisto que
no puede concederse un reintegro a menos que se radique
una petición para ello dentro de los 4 años siguientes al pago
de la contribución. *González Padín Co., Inc.* v. *Tribunal de
Contribuciones,* 66 D.P.R. 964, 989–992.([3])

Sin embargo, en cuanto a otras contribuciones, arbitrios
inclusive, la autoridad del Tesorero a hacer reintegros ema-
naba de la Ley de 1904. Y de su faz dicha Ley no tenía lí-
mite de tiempo dentro del cual radicar ante el Tesorero una
solicitud de reintegro. El problema de la prescripción no
era serio mientras no existiera remedio judicial alguno para
revisar las decisiones administrativas del Tesorero dene-
gando las solicitudes de reintegro. Pero después de empe-
zar a regir el inciso 4 dando vida a tal remedio judicial, sur-
gió la posibilidad de que un contribuyente pudiera radicar
una reclamación bajo la Ley de 1904 al efecto de que mu-
chos años antes hizo un pago voluntario de arbitrios en ex-
ceso. Cuando el Tesorero denegaba su solicitud, el contri-
buyente podía alegar que bajo el inciso 4 tenía derecho a
radicar una querella ante el Tribunal de Contribuciones den-

---

([3])El caso de *Jones* v. *Liberty Glass Co.,* 332 U.S. 524, resuelto el 22 de
diciembre de 1947, eliminó cualquier posible problema en cuanto a si una recla-
mación fué hecha bajo la sección 64, que tiene un término prescriptivo o bajo
la sección 75 de la Ley de Contribuciones sobre Ingresos, que carece de tal
término. Bajo el caso de *Jones* ya se ha decidido que es inmaterial si el pago
se hace por el contribuyente a iniciativa propia o a instancia del Tesorero.
Bajo ambas circunstancias, rige el período prescriptivo de cuatro años. Véase
*González Padín Co., Inc.* v. *Tribunal de Contribuciones,* supra, págs. 990–91.

tro de los 30 días siguientes a la negativa del Tesorero a efectuar el reintegro.

Para prevenir esta posibilidad, la Legislatura enmendó la Ley de 1904. Ley núm. 261, Leyes de Puerto Rico, 1946 ((1) pág. 541), según fué enmendada por la Ley núm. 388, Leyes de Puerto Rico, 1947 (pág. 745). Bajo estas Leyes el Tesorero está autorizado a efectuar un reintegro de contribuciones pagadas indebidamente o en exceso, solamente si el contribuyente ha radicado una petición de reintegro con el Tesorero dentro de los cuatro años siguientes al pago.([4])

Pasemos ahora a los hechos del presente caso. Contrario a algunos de nuestros casos anteriores, estos hechos ocurrieron después de la aprobación de la Ley núm. 169 de 1943. En tres ocasiones distintas—octubre 21, 1943, diciembre 27, 1943 y marzo 27, 1944—el Tesorero requirió al peticionario para que pagara arbitrios sobre ciertos artículos embargados por aquél para asegurar el pago. En 28 de abril de 1944 y en 4 de mayo de 1944 el peticionario pagó los arbitrios bajo protesta. Luego, en una fecha que no aparece del récord, el contribuyente radicó con el Tesorero una solicitud de reintegro, que fué denegada el 2 de junio de 1944. El 19 de junio de 1944 el contribuyente radicó una querella ante el Tribunal de Contribuciones solicitando el reintegro.

Aparentemente el peticionario cumplió con el inciso 4. Es cierto que del récord no surge la fecha exacta en que se solicitó el reintegro del Tesorero. Pero obviamente esto fué entre las fechas de los pagos en abril y mayo de 1944, y la negativa del Tesorero a la solicitud de reintegro el 2 de junio de 1944. Por tanto, el contribuyente solicitó el reintegro del Tesorero y radicó su querella ante el Tribunal de Contribuciones dentro de los 30 días siguientes a la negativa de su solicitud, según exige el inciso 4.

---

([4])*Cf. E. Santaella & Bros. v. Tribunal de Contribuciones,* supra; *Royal Bank v. Tribunal de Contribuciones,* supra.

Además, suponiendo sin decidirlo, que la Ley núm. 261 de 1946 y la Ley núm. 388 de 1947 se aplican a este caso con supuesto efecto retroactivo,([5]) el peticionario también cumplió con estas Leyes. Como hemos visto, la Ley de 1904 ni estableció un derecho ni un remedio judicial; meramente autorizó al Tesorero a concederle al contribuyente un remedio administrativo. *R. Santaella & Bros.* v. *Tribunal de Contribuciones,* supra. Y la Ley núm. 261 por sus términos tampoco establece un derecho o remedio judicial. Más bien limita la autoridad del Tesorero conferídale anteriormente por la Ley de 1904; luego puede hacer un reintegro sólo si el contribuyente solicita el mismo dentro de los cuatro años del pago en exceso. Pero el peticionario sin lugar a dudas cumplió con las Leyes núms. 261 y 388. Su petición de reintegro fué radicada con el Tesorero en algún día en 1944, o sea dentro de cuatro años de sus supuestos pagos en exceso hechos en 1943 y 1944.

Sin embargo, el Tribunal de Contribuciones desestimó la querella por falta de jurisdicción, de acuerdo con su decisión en *Porto Rico Iron Works Inc.* v. *Tesorero,* 4 D.T.C. —, resuelto el 3 de julio de 1946.([6]) Su teoría fué que hay dos caminos para recurrir al Tribunal de Contribuciones. Según el primero, el contribuyente tiene derecho a radicar una solicitud ante el Tesorero por reintegro de contribuciones pagadas indebidamente, siempre y cuando la radique dentro de los cuatro años siguientes al pago en exceso. Si el Tesorero le deniega su petición, entonces bajo este procedimiento tiene el contribuyente que radicar una querella de reintegro ante el Tribunal de Contribuciones, dentro de los treinta

---

([5])El problema del efecto de las Leyes núms. 261 y 388 sobre reclamaciones de reintegro radicadas con el Tesorero antes de que dichas leyes fueran aprobadas, está pendiente de resolución en este Tribunal en *Ana María Sugar Co.* v. *Tribunal de Contribuciones,* Certiorari Núm. 100; *Mayagüez Light, Power and Ice Co., Inc.* v. *Tribunal de Contribuciones,* Certiorari Núm. 101; e *International General Electric, S.A., Inc.* v. *Tribunal de Contribuciones,* Certiorari Núm. 137.

([6])*Cf. Buscaglia* v. *Tribunal de Contribuciones,* 67 D.P.R. 73.

días siguientes a la resolución del Tesorero denegándole el reintegro, de conformidad con el inciso 4 de la sección 3 de la Ley núm. 169 de 1943. El segundo procedimiento es pagar la contribución bajo protesta, después de requerírselo el Tesorero, de conformidad con las Leyes núms. 8 y 17, y demandar luego el reintegro ante el Tribunal de contribuciones a tenor con la Ley núm. 169.

El Tribunal de Contribuciones resolvió que si el Tesorero hace un requerimiento por arbitrios, el contribuyente dispone solamente del segundo procedimiento. Cuando el Tesorero no hace requerimiento alguno, el Tribunal de Contribuciones resolvió que el primer procedimiento es el único remedio de que dispone el contribuyente.

Toda vez que el contribuyente en este caso recibió un requerimiento del Tesorero y designó su pago como hecho bajo protesta, el Tribunal de Contribuciones concluyó que era de aplicación aquí el segundo procedimiento. En relación con este procedimiento, resolvió que las Leyes núms. 8 y 17 deben leerse conjuntamente con el inciso 5 de la sección 3 de la Ley núm. 169. La teoría del Tribunal fué que bajo este procedimiento la decisión administrativa del Tesorero requerida bajo el inciso 4 de la Ley núm. 169 para poder invocar la jurisdicción del Tribunal de Contribuciones, es el requerimiento de pago del colector de rentas internas a tenor con las Leyes núms. 8 y 17, con el período de treinta días dentro del cual debe radicarse el pleito ante el Tribunal de Contribuciones después de la decisión administrativa, empezando a correr desde la fecha del pago.

El contribuyente, después del requerimiento del Tesorero, pagó los arbitrios bajo protesta el 28 de abril de 1944, y el 4 de mayo de 1944. Toda vez que el peticionario no radicó su querella ante el Tribunal de Contribuciones hasta el 19 de junio de 1944, o sea más de treinta días después de las fechas de los pagos, el Tribunal de Contribuciones, bajo

la teoría arriba expuesta, desestimó la querella por falta de jurisdicción.([7])

Con el fin de poder considerar el problema aquí enunciado, precisa determinar como cuestión preliminar, si las Leyes núms. 8 y 17 han sobrevivido en todo o en parte después de la aprobación de la Ley núm. 169. Algunos de nuestros casos análogos nos ayudan en este punto. Hemos resuelto que la sección 3 de la Ley núm. 169 no derogó por implicación el requisito de la sección 57(*a*) de la Ley de Contribuciones sobre Ingresos en cuanto a la fianza de las tres cuartas partes, al solicitar un contribuyente la revisión de una deficiencia ante el Tribunal de Contribuciones. *Mayagüez Lt., P. & I. Co.* v. *Tribunal de Contribuciones*, 65 D.P.R. 30. De igual forma, hemos resuelto que nada de lo contenido en la sección 3 de la Ley núm. 169 conflige con, y por tanto ésta no derogó por implicación, la disposición de la sección 7 de la Ley núm. 99, Leyes de Puerto Rico, 1925([8]) en relación con el pago de aquella parte de la contribución sobre herencia con la cual el contribuyente estuviera conforme. Resolvimos en el mismo caso que el período de treinta días para solicitar la revisión ante el Tribunal de Contribuciones confligía con el período de cuatro meses de la Ley de Contribución sobre Herencias, y decidimos que el contribuyente debe recurrir ante el Tribunal de Contribuciones dentro de treinta días después de la notificación del Tesorero

([7])Concluímos más adelante que bajo este segundo procedimiento—Leyes núms. 8 y 17 leídas conjuntamente con el inciso 5 de la sección 3 de la Ley núm. 169—los 30 días se empiezan a contar desde la fecha del requerimiento, y no desde la fecha del pago. *A fortiori,* si el Tribunal de Contribuciones hubiera calculado los treinta días desde las fechas de los requerimientos— octubre 21 de 1943, diciembre 27 de 1943 y marzo 27 de 1944—la querella del 19 de junio de 1944 fué radicada muy tarde. Añadimos la advertencia de que esta nota está desde luego predicada en la premisa de que el contribuyente seguía el segundo procedimiento; pero más adelante encontramos que no podemos aceptar esta premisa.

([8])Para una historia legislativa posterior de la sección 7, véanse la Ley núm. 303, Leyes de Puerto Rico, 1946 ((1) pág. 783); Ley núm. 432, Leyes de Puerto Rico, 1947 ((1) pág. 883); *Araújo* v. *Tribunal de Contribuciones,* 67 D.P.R. 875.

de que se adeuda la contribución. *Del Toro* v. *Tribunal de Contribuciones,* 65 D.P.R. 63.(⁹)

En cuanto a los arbitrios, encontramos que el inciso 5 de la sección 3 de la Ley núm. 169 dispone que el Tribunal de Contribuciones puede revisar la negativa del Tesorero de un "requerimiento de pago por el Tesorero de Puerto Rico en virtud de cualquier arbitrio . . . ". Quizás se podría argüir plausiblemente que bajo el inciso 5 un contribuyente tiene derecho a proseguir ante el Tribunal de Contribuciones después de un mero requerimiento y sin realizar pago alguno. Y a primera vista parecería que esto conflige con, y en su consecuencia sustituye, las leyes anteriores núms. 8 y 17 que requieren como condición previa a un pleito sobre arbitrios que se haga el pago bajo protesta. Pero contrario a la situación en casos de deficiencias de contribuciones sobre ingresos, *Mayagüez Lt., P. & I. Co.* v. *Tribunal de Contribuciones,* supra, un contribuyente que radique un pleito sobre arbitrios ante el Tribunal de Contribuciones no viene obligado a prestar fianza. Sin embargo, la regla es generalmente que un contribuyente debe pagar primero y litigar después o a lo menos prestar una fianza. *Ballester* v. *Tribunal de Apelación de Contribuciones,* 60 D.P.R. 768, 776. El Tesorero puede, desde luego, forzar el pago de arbitrios bajo protesta, mediante embargo o amenaza de embargo. Pero esto echaría sobre el Departamento de Hacienda el trabajo administrativo de determinar en qué casos es aconsejable tal acción. En vista de estas consideraciones y de los motivos expuestos en nuestros casos anteriores ya citados en los que armonizamos con la Ley núm. 169 otras disposiciones procesales de estatutos específicos que cubren otras clases de contribuciones, convenimos con el Tribunal de Contribuciones en que el inciso 5 de la Ley núm. 169 y las Leyes núms. 8 y 17 deben leerse conjuntamente, y que el contribu-

---

(⁹)Sobre una cuestión similar que envuelve contribuciones sobre la propiedad, *Cf. Figueroa* v. *Tesorero,* 2 D.T.C. 601; *Cía. Cervecera* v. *Tesorero,* 3 D.T.C. 488

yente debe cumplir tanto con las Leyes núms. 8 y 17 como con el inciso 5. En su consecuencia, el requerimiento por sí sólo bajo el inciso 5 no concede derecho al contribuyente a invocar la jurisdicción del Tribunal de Contribuciones; el contribuyente debe también después del requerimiento pagar bajo protesta de conformidad con las Leyes núms. 8 y 17 antes de que tenga derecho a radicar querella ante el Tribunal de Contribuciones bajo el segundo procedimiento.

Como hemos visto, el Tribunal de Contribuciones resolvió que bajo este segundo procedimiento los treinta días dentro de los cuales un contribuyente debe radicar su querella ante el Tribunal de Contribuciones se cuentan desde la fecha del pago más bien que desde la fecha del requerimiento. El Tribunal de Contribuciones indudablemente eligió el enfoque más equitativo. Pero como hemos indicado en nuestros casos anteriores sobre problemas similares, la última ley debe prevalecer. Bajo la sección 4 de la Ley núm. 169, la jurisdicción del Tribunal de Contribuciones no puede invocarse excepto para revisar una resolución administrativa del Tesorero. El Tribunal de Contribuciones resuelve y convenimos en ello, que bajo este segundo procedimiento el requerimiento del Tesorero bajo el inciso 5 de la sección 3 de la Ley núm. 169 constituye la resolución administrativa del Tesoro. Y la sección 3 de la Ley núm. 169 dispone taxativamente que el pleito debe radicarse dentro de 30 días después del requerimiento hecho por el Tesorero bajo el inciso 5. Si bien para poder invocar la jurisdicción del Tribunal de Contribuciones se requiere también el pago por virtud de las Leyes núms. 8 y 17, no podemos escapar a la conclusión de que en la Ley núm. 169 posterior, la Legislatura dispuso que los 30 días empezaran a contarse desde la fecha del requerimiento. No podemos eliminar dicha disposición mandatoria de la ley posterior. Por tanto nos vemos constreñidos a resolver que el contribuyente debe no solamente pagar bajo protesta sino también radicar su querella ante el

Tribunal de Contribuciones dentro de 30 días del requeri·
miento. Véase *Del Toro* v. *Tribunal de Contribuciones*, su-
pra; cf. *Araújo* v. *Tribunal de Contribuciones*, supra.([10])

¿Cumplió el peticionario con el procedimiento que acaba-
mos de trazar? Calificó su pago como hecho bajo protesta.
Pero no radicó su reclamación dentro de los 30 días siguien-
tes al requerimiento. Por tanto no cumplió con el segundo
de los dos caminos hacia el Tribunal de Contribuciones, que
éste resolvió existían.([11])

Sin embargo, todavía queda la cuestión de si el no
cumplir con el procedimiento para el segundo camino al Tri-
bunal de Contribuciones impide al peticionario utilizar el
primero. El Tribunal de Contribuciones resolvió que sí.
Como hemos visto, el primer camino contempla el pago en
exceso de cualquier contribución; una petición al Tesorero
dentro de cuatro años después del pago en exceso bajo la
Ley de 1904, según fué enmendada por las Leyes núms. 261
y 388; y un pleito ante el Tribunal de Contribuciones bajo
el inciso 4 de la sección 3 de la Ley núm. 169 dentro de 30
días siguientes a la negativa del Tesorero a realizar el rein-
tegro. La negativa del Tesorero constituye la decisión ad-
ministrativa del Tesorero exigida por la sección 4 de la Ley
núm. 169.

Notamos primeramente que el Tesorero no admite que el

([10])Creemos propio aclarar el punto de que un contribuyente tiene derecho
a proceder bajo las Leyes núms. 8 y 17 pagando bajo protesta una vez que
recibe el requerimiento del Tesorero. Nuestros casos de contribuciones sobre
ingresos, citados en *Cía. Ron Carioca* v. *Tribunal de Contribuciones*, supra,
pág. 715–16, que requieren algo más, como los embargos o amenazas de em-
bargo, con el fin de justificar la designación de pago bajo protesta, envolvían
diferentes consideraciones y no están en pugna con nuestra decisión en este
caso de que el requerimiento de pago de arbitrios, sin más, le da derecho al
contribuyente a caracterizar su pago como hecho bajo protesta y a proceder
bajo las Leyes núms. 8 y 17. Bajo dichas circunstancias el contribuyente está
haciendo exactamente lo que exigen las Leyes 8 y 17. *Oliver* v. *Domenech,
Tesorero*, 58 D.P.R. 64; *Pérez* v. *Tribunal de Apelación de Contribuciones*, 61
D.P.R. 33; *Cf. Blanco* v. *Tribunal de Apelación de Contribuciones*, 61 D.P.R. 23.

([11])Arguye el peticionario que si se resolviera que gobiernan en este caso
las Leyes núms. 8 y 17 junto a la núm. 169, su petición de reintegro radicada
con el Tesorero equivalía a una moción al Tesorero para que reconsiderara el

Tribunal de Contribuciones resolvió correctamente que este primer procedimiento existe. Por el contrario, alega que el inciso 4 de la sección 3 no puede invocarse cuando, como ocurre en este caso, el contribuyente no hace uso a tiempo del remedio concedídole por un estatuto específico, tales como las Leyes núms. 8 y 17, leídas conjuntamente con el inciso 5 de la sección 3 de la Ley núm. 169. Arguye que la Legislatura tuvo por miras limitar el inciso 4 a aquellos casos en que el contribuyente carece de algún otro remedio.

El Tesorero indica que cuando existen disputas en relación con contribuciones sobre la propiedad, sobre ingresos, sobre herencia y con arbitrios, la Legislatura ha creado varios remedios mediante estatutos especiales, cada uno con un procedimiento específico, incluyendo tales requisitos como la prestación de fianzas y términos para hacer pagos, acompañar recibos y radicar querellas. Alega que el dejar de cumplir con estos requisitos impide el ejercicio de estos remedios, citando los casos de *R. Santaella & Bros.* v. *Tribunal de Contribuciones*, supra, y *Axton Fisher Tobacco Co.* v. *Buscaglia, Tes.*, supra. Por tanto, el Tesorero arguye que mediante el inciso 4 la Legislatura no pudo tener en mente crear un remedio alternativo que hubiera permitido al contribuyente eludir estos requisitos o relevar a un contribuyente que no cumplió con algunos requisitos de los remedios provistos en las leyes especiales. El inciso 4, afirma el Tesorero, entra en juego no como un remedio alternativo, sino sólo en aquellas situaciones en que no existe remedio otro alguno.

El Tesorero pasa por alto el hecho de que los requisitos de las leyes específicas tienen el fin primordial de asegurar

requerimiento de pago; que bajo la cláusula del Disponiéndose de la sección 3 de la Ley núm. 169, el período de treinta días queda en suspenso si se radica dicha moción y el Tesorero decidiese reconsiderarlo; y que la querella fué por tanto radicada en tiempo. Sin examinar otras posibles objeciones a esta contención, estamos obligados a rechazarla porque el Tesorero nunca decidió reconsiderar el requerimiento. Éste la denegó de plano el 2 de junio. Por tanto nunca se suspendió en momento alguno el período de treinta días.

el pago de las contribuciones mientras se litiga el caso. Pero en un pleito bajo el inciso 4 tales salvaguardas del tesoro público son innecesarias, toda vez que el pleito se prosigue por reintegro de una contribución ya pagada.

No podemos convenir con la contención del Tesorero al efecto de que al insertar al final del inciso 4 la frase—"o cobrada ilegalmente por cualquier otra causa"—la Legislatura demostró su intención de crear un remedio solamente para aquellos casos en que el contribuyente no tenía remedio otro alguno. El Tesorero alega que este lenguaje significa que el inciso 4 no tiene aplicación a aquellos casos cubiertos especialmente por otros estatutos y por otros incisos de la sección 3 de la Ley núm. 169, tales como el inciso 5 que cubre los pleitos basados en requerimientos del Tesorero por arbitrios. Pero estas palabras tienen un propósito enteramente diferente. Ellas son usadas como una frase general que bajo la regla de *ejusdem generis,* véase *Puerto Rico Ilustrado* v. *Buscaglia, Tes.,* 64 D.P.R. 914, le da derecho al contribuyente a demandar por el reintegro no sólo de contribuciones pagadas indebidamente, o pagadas en exceso, si que también cualquier otra contribución "cobrada ilegalmente" en forma similar.

La Legislatura optó por el inciso 4 autorizar los pleitos de reintegro de pagos de contribuciones en exceso en lenguaje amplio y comprensivo. Nada encontramos en dicho lenguaje que limite este remedio a casos donde no exista remedio otro alguno. Por el contrario, hemos permitido en otras situaciones pleitos bajo el inciso 4 donde el contribuyente no se ha acogido a las ventajas de otros remedios disponibles. Compárese *The Coca Cola Co.* v. *Tribunal de Contribuciones,* supra, con *Standard Oil Co.* v. *Tribunal de Contribuciones,* 64 D.P.R. 672. Además, el hecho de que los procedimientos para los remedios alternativos se traslapen hasta cierto extremo, no impide que existan conjuntamente.

En verdad, hemos visto que nuestra estructura contributiva está repleta de procedimientos que traslapan entre sí.

Por tanto, no estamos conformes con el Tesorero. Y convenimos con el Tribunal de Contribuciones hasta el punto de hallar disponibles para el contribuyente en un caso de arbitrios, dos remedios: (1) las Leyes núms. 8 y 17, leídas conjuntamente con el inciso 5 de la sección 3 de la Ley núm. 169; (2) el inciso 4 de la sección 3 de la Ley núm. 169. Pero no podemos convenir con el Tribunal de Contribuciones en que el requerimiento del Tesorero impide a un contribuyente invocar el inciso 4. Es cierto que cuando no hay requerimiento, sólo existe el remedio bajo el inciso 4. Pero cuando se hace dicho requerimiento el contribuyente está en una posición de elegir entre los dos remedios.

De igual modo resolvió el Tribunal de Contribuciones que mediante el pago bajo protesta el contribuyente con ello eligió el remedio provisto por las Leyes núms. 8 y 17. No puede dudarse que al pagar bajo protesta el contribuyente conservó intacto su derecho a proceder bajo las Leyes núms. 8 y 17. Pero en manera alguna resulta que el pago bajo protesta fué una elección irrevocable del contribuyente del remedio provisto por las Leyes núms. 8 y 17, cerrando con ello la puerta al remedio hallado en el inciso 4.

Convendríamos con el Tribunal de Contribuciones en que el pago bajo protesta era la encrucijada decisiva que conduce exclusivamente al remedio provisto por las Leyes núms. 8 y 17, si el inciso 4 dispusiera que no se aplicaba a pagos bajo protesta. Pero el inciso 4 ni expresa ni implícitamente impide los pleitos bajo el mismo donde el pago se hace bajo protesta. Tampoco limita el inciso 4 el remedio provisto en el mismo para casos de pagos voluntarios en exceso. Por el contrario, su lenguaje es amplio: se aplica a todos los pagos en exceso. Ya se designe el pago como voluntario o ya bajo protesta, el inciso 4 dice incondicionalmente que se puede demandar por el reintegro.

La verdad es que la frase "pago bajo protesta" perdió mucha de su magia en esta jurisdicción cuando la Legislatura aprobó el inciso 4. Antes de ello el no pagar bajo protesta significaba que no existía remedio judicial alguno para recobrar los pagos en exceso.([12]) Al cambiar el inciso 4 esta situación, proveyó para los pleitos de reintegro, sin hacer referencia a la naturaleza voluntaria o involuntaria del pago. En su consecuencia, el hecho de que un contribuyente que paga arbitrios bajo protesta no haga uso luego del remedio provisto por las Leyes núms. 8 y 17, no quiere necesariamente decir que también está impedido de utilizar el remedio diferente provisto por el inciso 4.

Podría haber otros casos en que estuviéramos justificados en resolver que un contribuyente ha hecho una elección entre dos remedios que le impide iniciar un nuevo pleito bajo un segundo remedio, cuando por algún motivo no tiene éxito en un pleito anterior instado bajo el primer remedio. Pero aquí la dificultad estriba en que no podemos decir que el peticionario había elegido irrevocablemente el remedio prescrito por las Leyes núms. 8 y 17. Primordialmente esto es así porque bajo cualquiera de los dos remedios el pago es el primer paso del contribuyente. Es cierto que el peticionario llamó su pago "bajo protesta". Pero eso por sí sólo no es determinante. Aun después de tal pago el contribuyente todavía tiene derecho a elegir el procedimento posterior, bien bajo las Leyes núms. 8 y 17 o bajo el inciso 4. Por tanto el próximo paso es el decisivo. Y aquí encontramos la actuación del peticionario enteramente consistente con los requisitos del inciso 4. Solicitó del Tesorero el reintegro dentro de los 4 años siguientes al pago; y demandó ante el Tribunal de Contribuciones dentro de 30 días des-

---

([12])*Cf. Blanco* v. *Tribunal de Apelación de Contribuciones,* supra, y *Royal Bank* v. *Tribunal de Contribuciones,* supra, donde resolvimos que la contribución fué pagada voluntariamente aunque el contribuyente la designara como pagada bajo protesta. Bajo algunas circunstancias el reverso puede ser cierto: El no tomar pasos ulteriores, como en este caso, bajo las Leyes núms. 8 y 17 resulta en efecto en la pérdida del calificativo de pago bajo protesta.

pués de habérsele negado su petición. Por otro lado, si tratásemos este pago como hecho bajo protesta a los fines de invocar el remedio provisto bajo las Leyes núms. 8 y 17, no debió haber esperado·solicitar el reintegro del Tesorero. En su lugar, debió dentro de 30 días después del requerimiento no solamente haber pagado bajo protesta sí que también haber radicado su demanda; en su consecuencia, si se resolviera que su pleito cae bajo las Leyes núms. 8 y 17, entonces éste sería tardío ya que fué radicado después de transcurridos 30 días del requerimiento.

Nos damos cuenta de que el resultado a que llegamos hace difícil, sino imposible, en algunos casos determinar qué remedio persigue el contribuyente hasta que radica su querella en el Tribunal de Contribuciones.([13]) Pero no vemos objeción fundamental a este resultado. Cumple el propósito de conceder a los contribuyentes una decisión en los méritos en vez de una decisión sobre motivos procesales. Y de cualquier modo, la situación no ha sido creada por nosotros; el asunto compete a la Legislatura.

En síntesis, cuando el Tesorero requiere el pago([14]) de arbitrios, el contribuyente tiene dos remedios para elegir:

---

([13]) En contribuciones sobre ingresos la elección por el contribuyente de los remedios es más fácil de determinar. Contrario a los casos de· arbitrios, donde el pago es el primer paso bajo ambas alternativas, cuando un contribuyente resiste una notificación de deficiencia, éste no paga la contribución. Por el contrario, presta una fianza de no menos de las ¾ partes y demanda ante el Tribunal de Contribuciones. *Mayagüez Light, Power and Ice Co.*, v. *Tribunal de Contribuciones*, supra. Bajo su remedio alternativo, en vez de dejar de pagar, el contribuyente paga y demanda por el reintegro. *The Coca Cola Co.* v. *Tribunal de Contribuciones*, supra.

([14]) Los contribuyentes algunas veces pagan sin requerimiento para evitar los intereses y las penalidades. Véanse las secciones 39 y 50 de la Ley de Rentas Internas, según fué enmendada por la Ley núm. 78, Leyes de Puerto Rico, 1945 ((1) pág. 289), y la Ley núm. 426, Leyes de Puerto Rico, 1947 (pág. 869). Pero si no se efectúa requerimiento alguno, el procedimiento contemplado por las Leyes núms. 8 y 17 nunca entra en juego. Este procedimiento exige tanto el requerimiento del Tesorero como el pago bajo protesta por el contribuyente, seguidos de ún pleito ante el Tribunal de Contribuciones dentro de los treinta días del requerimiento. En consecuencia, si el pago se hace sin requerimiento, el contribuyente sólo tiene un remedio; v.g., aquél concedídolo por el inciso 4.

Bajo el primero debe, sin esperar a solicitar nada del Tesorero, pagar la contribución bajo protesta después del requerimiento y demandar el reintegro ante el Tribunal de Contribuciones dentro de 30 días del requerimiento. De conformidad con el segundo remedio, el primer paso es el mismo: pagar la contribución. En esa etapa el contribuyente puede ejercitar su elección entre los dos remedios mediante el pago voluntario. Si lo hace, cierra la puerta al remedio que de otro modo tenía bajo las Leyes 8 y 17. Pero si desea posponer su elección entre los remedios hasta más tarde, puede pagar bajo protesta. Bajo estas circunstancias, puede todavía elegir entre los caminos disponibles bajo las Leyes 8 y 17 y bajo el inciso 4, respectivamente, para llegar al Tribunal de Contribuciones. Esto es así porque el inciso 4 provee un remedio—ya se paguen las contribuciones voluntariamente o bajo protesta. Su elección por tanto no es definitiva hasta el próximo paso: bajo las Leyes núms. 8 y 17 debe, sin recurrir al Tesorero, pagar bajo protesta y demandar ante el Tribunal de Contribuciones dentro de 30 días después del requerimiento; bajo el inciso 4 debe radicar ante el Tesorero una petición de reintegro, lo que debe hacerse dentro de cuatro años del pago, y luego demandar ante el Tribunal de Contribuciones dentro de 30 días después que el Tesorero le deniegue su petición.

Reconocemos que las Leyes núms. 8 y 17 han perdido alguna fuerza. De acuerdo con nuestra decisión, aun si el pago fuera hecho ''bajo protesta'', un contribuyente no viene obligado a proceder ante el Tribunal de Contribuciones dentro de 30 días del requerimiento según lo establecen las Leyes núms. 8 y 17, leídas conjuntamente con el inciso 5 de la sección 3 de la Ley núm. 169. En su lugar, puede elegir considerar su pago como un pago hecho en exceso, según se define en el inciso 4, y en cualquier momento hasta cuatro años después del pago, solicitar el reintegro del Tesorero, y demandar luego ante el Tribunal de Contribuciones

una vez que el Tesorero le deniegue su petición. Pero las Leyes núms. 8 y 17 todavía quedan en vigor para aquellos que prefieren actuar con más rapidez: pueden después de requerírsele pagar bajo protesta y proceder inmediatamente—es decir, dentro de 30 días después del requerimiento—ante el Tribunal de Contribuciones, sin la demora envuelta en solicitar el reintegro del Tesorero. Y aun más importante, eligiendo el procedimiento bajo el inciso 4 de la sección 3 de la Ley núm. 169, el contribuyente pierde intereses al 6 por ciento anual desde la fecha de la radicación de la querella, los cuales percibe el contribuyente si demanda bajo las Leyes núms. 8 y 17, leídas conjuntamente con el inciso 5. *Buscaglia* v. *Tribunal de Contribuciones*, 67 D.P.R. 73.

Es cierto que esto hace que el ingreso público sea incierto durante cuatro años y treinta días. Durante ese tiempo un contribuyente puede radicar su solicitud con el Tesorero, y luego demandar ante el Tribunal de Contribuciones el reintegro de un pago en exceso, ya fuere voluntario o bajo protesta. Pero eso es exactamente lo que el inciso 4—juntamente con los términos prescriptivos de la sección 64(*b*) de la Ley de Contribuciones sobre Ingresos y la Ley núm. 261 de 1946—prescriben. La Legislatura abrió la puerta a tales pleitos. No compete a nosotros cerrarla.([15])

---

([15]) *González Padín Co., Inc.* v. *Tribunal de Contribuciones*, 66 D.P.R. 964, 992, no está en pugna con la conclusión a que aquí llegamos. Allí la cuestión era si una solicitud de reintegro de contribuciones sobre ingresos podía radicarse sin limitación de tiempo alguno de conformidad con la Ley de 1904, no obstante las disposiciones de la sección 64(*a*) y (*b*) de la Ley de Contribuciones sobre Ingresos, de que las peticiones de reintegro de contribuciones sobre ingresos deben radicarse dentro de cuatro años. Resolvimos que el estatuto especial, sección 64, y no el general, la Ley de 1904, gobierna cuando ambas cubren precisamente la misma acción: una petición de reintegro. Es cierto que aquí también tenemos un estatuto especial (Leyes núms. 8 y 17) frente a un estatuto general (inciso 4) que dispone en un caso el pago bajo protesta y en otro el pago, bien voluntario o "bajo protesta". La distinción sin embargo descansa en el hecho de que, como hemos visto, el próximo paso es diferente bajo los estatutos respectivos. El estatuto especial, en su consecuencia, no predomina, como en el caso de *Padín*, sobre el general. Ambos permanecen en efecto uno al lado del otro y disponen remedios y procedimientos alternativos.

Notamos de paso que los casos Federales no resuelven lo contrario. Los remedios judiciales alternativos que existen en el sistema Federal solamente para casos de contribuciones sobre ingresos y casos relacionados—los pleitos de reintegro son el remedio exclusivo para casos de arbitrios—son (1) en el Tribunal Contributivo para la redeterminación de deficiencias determinadas por el Comisionado; y (2) en términos generales, en la Corte de Reclamaciones o en las cortes de distrito para el reintegro de contribuciones ya pagadas. 10 Mertens, *Law of Federal Income Taxation,* sec. 58.45, págs. 345–47.[16] Una vez que se paga una deficiencia antes del pleito ante el Tribunal Contributivo Federal, el único remedio disponible está en la corte de distrito o en la Corte de Reclamaciones. Pero hemos visto que en esta jurisdicción, bajo nuestros estatutos que proveen remedios alternativos, el pago de arbitrios no es el paso decisivo que determina la elección que el contribuyente ha hecho. Es más, aun en el sistema Federal un pleito malogrado ante el Tribunal Contributivo Federal no es fatal. Si la petición no se radica ante el Tribunal Contributivo Federal dentro del término prescrito por ley, dicho Tribunal no tiene jurisdicción; pero el peticionario puede todavía pagar la deficiencia y demandar el reintegro ante la corte de distrito. *Beacon v. Commissioner, P. H. Tax Court Memorandum Decisions Service,* párr. 45,172, según fué reportado en Griswold, *Cases and Materials on Federal Taxation,* segunda ed., págs. 94–97.

---

(16) Si el contribuyente, después que radica su petición ante el Tribunal Contributivo, la hace efectiva para evitar el pago de intereses, el Tribunal retiene la jurisdicción. Sección 322(*d*), I.R.C. De igual manera, una vez que se radica ante el Tribunal una solicitud para que se redetermine una deficiencia, todas las reclamaciones de reintegro envueltas en ese mismo año son decididas por el Tribunal Contributivo. Esto es así para evitar la determinación fragmentada de responsabilidad sobre contribuciones de ingresos para un año específico. Sección 322(*c*), (*d*), I.R.C. Pero debe notarse que esta elección de remedio se torna efectiva solamente después de radicarse el pleito bajo una de las alternativas. Nuestro caso es diferente en que no se radicó pleito alguno de conformidad con el remedio provisto por las Leyes núms. 8 y 17, leídas conjuntamente con el inciso 5 de la sección 3 de la Ley núm. 169.

Concluímos que cuando el peticionario pagó su contri-- bución, bien le haya llamado voluntario o bajo protesta, no- había hecho elección alguna de los remedios. Habiéndola- pagado bajo protesta, pudo recurrir a las Leyes núms. 8 y 17 y demandar ante el Tribunal de Contribuciones dentro- de 30 días del requerimiento del Tesorero, sin tener que acu-- dir nuevamente ante' este- funcionario, siempre y cuando también pagara bajo protesta antes de que expiraran los treinta días. Bajo dichas circunstancias, la decisión admi- nistrativa requerida por la sección 4 de la Ley núm. 169 para conferir jurisdicción al Tribunal de Contribuciones, es el requerimiento del Tesorero. El contribuyente no hizo esto. Pero ello no le quitó su remedio bajo el inciso 4. Su elec- ción para proceder bajo el inciso 4 no ocurrió hasta que, den- tro de los cuatro años del pago en exceso, solicitó el reinte- gro del Tesorero. Al denegársele esta petición, bajo el in- ciso 4 él pudo, como hizo en este caso, demandar el reintegro dentro de treinta días ante el Tribunal de Contribuciones. Por tanto, el Tribunal de Contribuciones cometió error al desestimar la querella por falta de jurisdicción.[17]

El Tribunal de Contribuciones, con la única excepción de que guardó silencio en cuanto a las cuestiones de (1) que el pago bajo protesta no constituye una elección irrevocable por parte del contribuyente del remedio bajo las Leyes núms. 8 y 17, y (2) que bajo el último procedimiento los' 30 días. para recurrir ante el Tribunal de Contribuciones empiezan a correr desde la fecha del requerimiento, al resolver el caso de *Moscoso Hnos., Inc.* v. *Tesorero*, 2 D.T.C. 570, llegó a las.

---

[17] Aquí nada tenemos que ver con el problema de si el inciso 4 tuvo'. por miras revivir causas de acción que ya estaban prescritas, tanto en cuanto- a derecho como en cuanto a remedio, porque el contribuyente no hizo uso en- tiempo del remedio provisto por las leyes en vigor a la fecha del pago de- las sumas que ahora reclama. *Cf. R. Santaella & Bros.* v. *Tribunal de Con- tribuciones*, supra; *Royal Bank* v. *Tribunal de Contribuciones*, supra. Aquí el contribuyente pagó su contribución en 1944 después de entrar en vigor el inciso 4. Es obvio que tenía derecho a optar por demandar ante el Tribunal de Contribuciones de conformidad con el remedio alternativo provisto por el inciso 4.

mismas conclusiones a que llegamos nosotros aquí. Sin embargo, luego dicho Tribunal se negó a seguir su decisión en el caso de *Moscoso* en *Porto Rico Iron Works* y en el presente caso.

Para terminar indicaremos que han pasado casi tres años desde que dijimos en el caso de *Mayagüez Lt., P. & I. Co.* v. *Tribunal de Contribuciones,* supra, pág. 33: " . . . confiamos en que no está mal que sugiramos que . . . se haga un esfuerzo para delinear un estatuto de procedimiento para toda la litigación contributiva que sea sencillo, uniforme y completo. Las decisiones de este Tribunal sólo sirven, de paliativo; el remedio está en manos de la Legislatura."

Esta situación todavía no se ha corregido. Entretanto, sólo un oráculo puede señalar el procedimiento adecuado en nuestros casos contributivos. Las distinciones que se nos ha obligado a trazar "escasamente pueden recordarse más allá del tiempo invertido en exponerlas . . .".[18] Los litigantes continúan vagando en un laberinto de procedimiento. Y cuando finalmente radican sus pleitos, con motivo de estos estatutos en conflicto, los interesados pierden tiempo, dinero y energía con ningún propósito constructivo, excepción hecha de un ejercicio dialéctico.

Si bien la Asamblea Legislativa no tuvo esa intención, estos estatutos procesales consisten casi en su totalidad de una serie de elaboradas trampas. Ellos están de más en un sistema contributivo moderno, cuyo primer requisito es que la decisión en una controversia contributiva entre el gobierno y el ciudadano sea emitida en los méritos, y no sobre un centón de sutilezas procesales.

*La decisión del Tribunal de Contribuciones será revocada, y se devolverá el caso para ulteriores procedimientos no inconsistentes con esta opinión.*

---

[18] *Burton-Sutton Oil Co.* v. *Comm'r.,* 328 U.S. 25, 38, opinión separada del Juez Asociado Sr. Frankfurter.