PEDRO A. PIZÁ, INC., para beneficio de OCHOA FERTILIZER CORPORATION, peticionario, *v.* TRIBUNAL DE CONTRIBUCIONES, demandado; TESORERO DE PUERTO RICO, interventor.

Núm. 243.—*Sometido:* Diciembre 8, 1950.   *Resuelto:* Marzo 21, 1951.

*Córdova & González* y *Hernán R. Franco,* abogados del peticionario; *Hon. Procurador General Víctor Gutiérrez Franqui (Vicente Géigel Polanco, Ex Procurador General,* en el alegato) y *Elmer Toro Lucchetti, Procurador General Auxiliar,* abogados del interventor, demandado en el pleito principal.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

En 1947 Pedro A. Pizá, Inc. vendió dos camiones que tenía en plaza a la Ochoa Fertilizer Corporation a un precio que incluía los arbitrios. Pizá pagó éstos al Tesorero según lo exige la ley.[1] Ochoa solicitó del Tesorero el reembolso de los arbitrios por el fundamento de que estaba exenta del pago de contribuciones, véase *Buscaglia, Tes.* v. *Tribunal de Contribuciones,* 66 D.P.R. 711. El Tesorero denegó su solicitud. Su contención fué que el evento tributable fué la introducción de los camiones en Puerto Rico; que esta introducción la llevó a cabo Pizá y no Ochoa; y que Ochoa podía valerse de su exención contributiva solamente en el caso de que fuera Ochoa el "importador eficiente". Para beneficio de Ochoa, Pizá radicó demanda ante el Tribunal de Contribuciones solicitando el reintegro de los arbitrios pagados. El Tribunal de Contribuciones desestimó el caso por falta de jurisdicción a tenor con la Ley núm. 137, Leyes de Puerto Rico, 1945 (pág. 463). Para revisar esta decisión expedimos auto de *certiorari.*

■■ No nos detenemos a determinar si este pleito debió haberse instado por Ochoa o por Pizá. Interpretando las

---

[1] La sección 39 de la Ley de Rentas Internas, según fué enmendada por la Ley núm. 78, Leyes de Puerto Rico, 1945 (pág. 289), provee que el pago de los arbitrios impuestos por la sección 16, será hecho por la persona que introduce o vende los artículos. En el caso de automóviles, la sección 39(*d*) provee que los pagos se harán seis meses después de introducidos de no haberse vendido antes. En este último caso, el vendedor debe pagar el arbitrio dentro de 10 días después de la venta.

Enmiendas posteriores a la sección 39, según aparecen de la Ley núm. 426, Leyes de Puerto Rico, 1947 ((1) pág. 869), Leyes núms. 168 y 177, Leyes de Puerto Rico, 1948 ((1) págs. 411 y 443), y Leyes núms. 97 y 112, Leyes de Puerto Rico, 1949 ((1) págs. 243 y 275), no cambian el lenguaje pertinente de la sección 39 en tanto en cuanto concierne a este caso.

Y véase la Ley núm. 77, Leyes de Puerto Rico, 1944 (pág. 167).

alegaciones liberalmente, las interpretamos como que las mismas traen a ambas corporaciones ante la corte. En igual forma, es innecesario pasar sobre la contención del Tesorero al efecto de que bajo la sección 16(8) de la Ley de Rentas Internas([2]) el evento tributable aquí fué la introducción en Puerto Rico de los camiones por Pizá.([3]) A los fines del presente caso, suponemos, sin decidirlo, que el primer evento tributable fué la venta de los camiones por Pizá a Ochoa. Pero aun bajo esta suposición, Pizá más bien que Ochoa era el contribuyente. Como dijimos en *Porto Rico Telephone Co.* v. *Tribunal de Contribuciones*, 68 D.P.R. 154, 164, "Al examinar nuestro arbitrio de venta, encontramos que se le impone por ley al vendedor. Contrario a la situación en algunos estados, al vendedor ni se le prohibe ni se le exige que añada el arbitrio al precio de venta. Se le permite que haga lo que desee."([4])

Toda vez que Pizá era legalmente responsable por los arbitrios aquí envueltos, surge la conclusión de que el Tribunal de Contribuciones actuó correctamente al decidir que carecía de jurisdicción en este caso en virtud de la sección 4 de la Ley núm. 169, Leyes de Puerto Rico, 1943 (pág.

---

([2]) Ley núm. 437, Leyes de Puerto Rico, 1946 ((1) pág. 1249). Véase también Ley núm. 425, Leyes de Puerto Rico, 1947 ((1) pág. 863); Ley núm. 147, Leyes de Puerto Rico, 1949 ((1) pág. 391).

([3]) El Tesorero descansa en *Buscaglia* v. *Ballester*, 162 F.2d 805, 808 (C.C.A. 1, 1947), cert. denegado 332 U. S. 816; *West India Oil Co.* v. *Domenech*, 311 U.S. 20. Pero cf. *Ballester Hermanos* v. *Tribunal de Contribuciones*, 66 D.P.R. 560, 584–86, escolio 21. Dejamos pendiente el efecto de la revocación del último caso en 162 F.2d 805 sobre los argumentos expuestos en el escolio 21.

([4]) Es cierto que en el caso de la *Porto Rico Telephone Co.* dijimos (págs 164–65) que: ". . . en la mayoría de los casos, y forzado por razones económicas, el vendedor le endosa el peso del arbitrio al consumidor." En verdad, fué a base de esta teoría que sostuvimos el arbitrio de uso. Es decir, indicamos que el arbitrio de uso equivalía económicamente al arbitrio de venta, toda vez que éste—igual que el de uso—cayeron económicamente sobre el consumidor. Pero ésa era una cuestión constitucional. Aquí el único problema es si el arbitrio está *legalmente* impuesto al vendedor o al comprador. En otras palabras, en el presente caso la responsabilidad legal, no la equivalencia económica, es decisiva. Y como ya se ha visto, nuestro arbitrio de ventas se impone *legalmente* sobre el vendedor.

601), según fué enmendada por la Ley núm. 137, Leyes de Puerto Rico, 1945 (pág. 463) (⁵). Como dijimos en *Standard Commercial Tobacco Co. Inc.* v. *Tribunal de Contribuciones*, 71 D.P.R. 749, la sección 4 establece dos requisitos previos para que el Tribunal de Contribuciones tenga jurisdicción: (1) el pleito debe ser instado por el contribuyente; (2) el demandante debe de hecho haber sufrido el peso económico de la contribución. Ni Pizá ni Ochoa cumplen con estos dos requisitos. Pizá fué el contribuyente, pero pasó el peso de la contribución a Ochoa. Y si bien Ochoa sufrió el peso económico de la contribución, no fué la contribuyente.

Las peticionarias sostienen que la Legislatura tuvo por miras disponer en la Ley núm. 137 que cualquier persona que hubiera sufrido el peso económico de un arbitrio, fuera o no el contribuyente, podía instar pleito ante el Tribunal de Contribuciones. Rechazamos este argumento en el caso de la *Standard Commercial* y lo volvemos a rechazar en éste. Para que este argumento proceda, tendríamos que resolver que al aprobar este estatuto la Legislatura quiso ampliar la jurisdicción del Tribunal de Contribuciones. Bajo esta teoría, si un arbitrio impuesto por ley al primer vendedor eventualmente fuera declarado nulo, cualquier consumidor posterior, no importa cuán remoto sea, de toda clase de mercancía, podría demandar ante el Tribunal de Contribuciones si pudiese probar que las contribuciones habían sido finalmente pasadas a él como parte del precio de compra. Estamos convencidos de que la Legislatura no tuvo la inten-

---

(⁵) La sección 4 así enmendada, al proveer en cuanto a la jurisdicción del Tribunal de Contribuciones en casos que envuelven arbitrios, dice en parte como sigue: "Cuando se trate de un requerimiento de pago por el Tesorero en virtud de cualquier arbitrio o contribución de licencia establecidos por las Leyes de Rentas Internas de Puerto Rico, o por la Ley de Bebidas de Puerto Rico, o por cualquier otra ley que establezca arbitrios o contribuciones de licencias, se podrá acudir en apelación ante dicho Tribunal solamente por la persona o entidad que realmente haya sufrido el peso de pagar el arbitrio o contribución, y una alegación en tal sentido y la prueba de la misma en su oportunidad, serán considerados como requisitos jurisdiccionales."

ción de *ampliar* la jurisdicción del Tribunal de Contribucio-
nes en esta forma. Por el contrario, el propósito de la Ley
núm. 137 fué *limitar* la jurisdicción del Tribunal de Contri-
buciones con el fin de impedir enriquecimiento injusto. La
Legislatura previó la posibilidad de que algunos contribu-
yentes pudieran obtener ventajas debido al hecho de que
determinado arbitrio fuera declarado nulo algunos años des-
pués que los contribuyentes sobre los cuales se impuso por
ley dicho arbitrio, lo hubieran pagado y pasado el mismo
a sus compradores. (6)    Por tanto, cerró las puertas de nues-
tros tribunales a tales casos. (7)    Solamente *los contribuyen-
tes* que hubieran absorbido las contribuciones y no las hubie-
ran pasado a sus compradores podían demandar para el rein-
tegro de las mismas. (8)

Réstanos hacer mención de una contención con respecto
a la Ley núm. 137. Arguyen las peticionarias que dicha
ley no es de aplicación a este pleito de reintegro toda vez
que la misma provee que será aplicable "Cuando se trate
de un requerimiento de pago por el Tesorero . . . ". Con-
venir con este argumento equivaldría a resolver que la Le-
gislatura tuvo por miras conceder jurisdicción cuando el
contribuyente pagaba a requerimiento del Tesorero, pero no
cuando pagaba voluntariamente. Creemos que la Legisla-
tura no tuvo el propósito de establecer tal discrimen. La

---

(6) Cf. *P. R. Tobacco Corp.* v. *Buscaglia, Tes.*, 62 D.P.R. 811; *A. Fisher
Tobacco Co.* v. *Buscaglia, Tes.*, 65 D.P.R. 125; *R. Santaella & Bros., Inc.* v.
*Tribunal de Contribuciones,* 66 D.P.R. 868.

(7) *Cf.* Ley núm. 67, Leyes de Puerto Rico, 1945 (pág. 249), aprobada
sustancialmente al mismo tiempo, la cual imponía una contribución de enri-
quecimiento injusto del 80 por ciento en aquellos casos en que un deman-
dante recibía el reintegro de contribuciones que habían pasado a su com-
prador como parte del precio de venta. Véanse también la Ley núm. 286,
Leyes de Puerto Rico, 1946 ((1) pág. 665); la Ley núm. 234, Leyes de
Puerto Rico, 1949 ((1) pág. 729). *Cf.* 26 U.S.C.A., secciones 700 *et seq.;
United States* v. *Kansas Flour Corp.*, 314 U. S. 212.

(8) Huelga decir que la Legislatura tenía el poder de retirar el consen-
timiento del soberano para que se le demandara por reintegro de contribu-
ciones. *Gerardino* v. *Tribl. Contribuciones*, 68 D.P.R. 219, 223-24, y casos
citados.

explicación es sencilla. La Ley núm. 137 fué aprobada en una época en que la Legislatura y el Tesorero estaban ambos bajo la impresión de que los pleitos de reintegro de arbitrios solamente procedían si los mismos habían sido pagados bajo protesta luego de un requerimiento del Tesorero. Por consiguiente, la Legislatura obviamente tuvo por miras que *todos* los pleitos de reintegro de arbitrios cumplieran con los requisitos de la Ley núm. 137. Mencionó un requerimiento de pago del Tesorero solamente debido a que tenía la impresión de que ésos eran los únicos pleitos que podían instarse en dicha época. Luego, resolvimos que un pleito de reintegro procede aun cuando el pago sea voluntario y no haya requerimiento de pago. *Gerardino* v. *Tribunal de Contribuciones*, 68 D.P.R. 219, 223–24, y casos citados. No obstante el lenguaje literal de la Ley núm. 137, en consecuencia creemos, vista la secuencia de hechos posteriores, que la Legislatura tuvo por miras proveer que la Ley núm. 137 fuera aplicable a todos los pleitos de reintegro de arbitrios, incluyendo el presente caso, en que el pago se hizo voluntariamente sin requerimiento del Tesorero.

Apoyándose en *West India Oil Co.* v. *Tribunal de Contribuciones*, 65 D.P.R. 76, las peticionarias afirman que ellas tienen derecho a ganar este caso en los méritos. Por otro lado, el Tesorero vigorosamente arguye que el caso de la *West India* fué resuelto erróneamente y debe ser revocado.[9] Nunca llegamos a esta cuestión ya que ni el Tribunal de Contribuciones ni este Tribunal Supremo tienen jurisdicción en este caso.

Reconocemos que el efecto práctico de la Ley núm. 137 es cerrarle las puertas de los tribunales a cualquier intento para hacer valer los derechos de un comprador que goza de exención contributiva bajo las circunstancias de este caso,

---

[9] El Tesorero descansa, entre otras autoridades, en las Anotaciones, 115 A.L.R. 667, 132 A.L.R. 706; *Lash's Products Co.* v. *United States*, 278 U. S. 175; *Pure Oil Co.* v. *State*, 12 S.2d 861 (Ala., 1943); *Alabama* v. *King & Boozer*, 314 U. S. 1.

independientemente de si el caso de *West India* fué correcta o erróneamente resuelto. Y tal comprador no tiene muchas posibilidades de obtener del Tesorero, sin acción judicial, el reintegro de una contribución pagada por el vendedor y cargada al comprador como parte del precio de compra, ya que el Tesorero consistentemente ha afirmado que el caso de *West India* es erróneo. Sin embargo, puede que haya medios por los cuales un comprador exento del pago de contribuciones pueda hacer que su exención sea efectiva económicamente. *Cf. Buscaglia, Tes.* v. *Tribl. de Contribuciones*, 66 D.P.R. 711, 721. De cualquier modo, el remedio, si es que alguno ha de concederse, para los compradores que gozan de exención contributiva bajo las circunstancias de este caso, es asunto que incumbe al Tesorero y a la Legislatura. La única cuestión que tenemos ante nos es una de jurisdicción. Y los tribunales no pueden actuar en virtud de la Ley núm. 137.

*La decisión del Tribunal de Contribuciones será confirmada.*